**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Felicia Sanders, individually and as Legal Custodian for K.M., a minor, | ) Civil Action No.:<br>) 2:16-cv-2356-RMG<br>) |
| Plaintiff, | ) **COMPLAINT** |
| vs. | ) |
| The United States of America, | ) |
| Defendant. | ) |

Felicia Sanders (hereinafter by name or "Plaintiff"), as Legal Custodian for K.M. (a minor), complaining of the Defendant alleges as follows:

1. K.M is a child and the niece of Tywanza Sanders and the great-niece of Susie Jackson. Plaintiff brings all actions for K.M. as her Legal Custodian. Both Plaintiff and K.M. were citizens and residents of Charleston, South Carolina, at the time of the events complained of herein.

2. The United States of America is the Defendant in this action.

3. Venue is proper in this Court in that all, or a substantial part, of the acts and/or omissions forming the basis of these claims occurred in the District of South Carolina, Charleston Division.

4. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1346(b)(1).

5. Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act by giving formal written notice to the USA through the filing of a Form 95

1

with the United States Attorney General and the FBI. The Department of Justice notified Plaintiff in February 2016 that the claim was denied.

6. All actions or inactions in this care were perpetrated or promulgated by employees and/or agents of the United States of America (through one of its political subdivisions or agencies, namely, in this case, the Federal Bureau of Investigation).

7. The United States, if a private person herein, "would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

8. On February 28, 2015, Dylann Roof was questioned by police officers from the City of Columbia, South Carolina about an earlier incident at the Columbiana Centre Mall in Columbia, South Carolina.

9. During Roof's questioning, authorities found in his possession a bottle of Suboxone, a narcotic used either for treating opiate addictions or as a recreational drug and a Schedule III controlled substance as defined in 21 U.S.C. § 802.

10. Roof admitted he was in possession of the controlled substance and also admitted that he did not have a prescription for the controlled substance.

11. Based on his admitted possession of this narcotic without a prescription, Roof was arrested and charged for Possession of a Schedule III Drug, S.C. Code § 44-53-370(d)(2).

12. Roof's arrest report created by the City of Columbia police officers, noted that Roof admitted possession of a controlled substance without a prescription.

13. Pursuant to the Code of Federal Regulations, 27 C.F.R. § 478.11, any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician is defined as an "unlawful user of or addicted to any controlled substance."

14. Due to the documentation of Roof's admitted possession of a controlled substance without a prescription, he was an "unlawful user of or addicted to any controlled substance" under Defendant's regulations.

15. Due to the fact that Roof was an unlawful user of or addicted to any controlled substance, he could not legally be sold a gun under the Brady Act, 18 U.S.C.A. § 922(d)(3), which provides:

> (d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—
> \*            \*            \*
> (3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));

18 U.S.C.A. § 922

16. In addition, the arrest records from Roof's February 29, 2015 arrest indicated that Roof had been charged with a felony.

17. Though this was not correct and the charge was a misdemeanor, based on the information contained in the February 29, Roof arrest report, Roof was under indictment for a felony crime punishable by imprisonment for a term exceeding one year, and, therefore, he could not legally be sold a gun under the Brady Act, 18 U.S.C.A. § 922(d)(1), which provides:

(d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—

(1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

18 U.S.C.A. § 922.

3

18. On April 11, 2015, just six weeks after his arrest, Roof attempted to purchase a handgun at Shooter's choice, a federally licensed firearm dealer located in West Columbia, South Carolina.

19. Pursuant to the Code of Federal Regulations, 28 C.F.R. Part 25, Defendant assumed a duty to create, maintain, and manage databases, referred to as the National Crime Information Center ("NCIC"), the National Instant Criminal Background Check System Index ("NICS Index"), and the Interstate Identification Index ("III").

20. Defendant has mandated that these databases must be used to perform all background checks on all potential firearm purchasers to insure that firearm dealers did not sell firearms in violation of the Brady Handgun Violence Prevention Act ("Brady Act") and particularly 18 U.S.C. § 922 or state law.

21. In addition to mandating that Defendant's database be used for all firearm purchase background checks, Defendant has also accepted and assumed a duty, as set out in the Code of Federal Regulations, 28 C.F.R. Part 25, to perform all steps of the background checks on all potential firearm purchasers by way of the National Instant Criminal Background Check System ("NICS").

22. South Carolina is one of thirty-six states and territories that have opted to rely on the Defendant's NICS for all firearm sales background checks. Accordingly, firearms dealers in South Carolina are *required* to use Defendant's database and also *required* to rely upon Defendant to actually perform the background checks through NICS to determine if receipt of a firearm by a potential purchaser would violate federal or state law.

23. Upon receiving a request for a background check from a federal firearms licensee, including a dealer of firearms, Defendant is required to search the databases it maintains

4

for matching records and is required to deny the receipt or transfer of a firearm to a person prohibited under federal or state law from receiving or possessing such firearm, including any person who is an unlawful user of or addicted to any controlled substance, as set out in 18 U.S.C. § 922(d)(3), and any person who is under indictment for a felony crime punishable by imprisonment for a term exceeding one year, as set out in 18 U.S.C. § 922(d)(1).

24. In compliance with the laws and procedures established by Defendant, Shooter's Choice initiated a background check on Roof through NICS on or about April 11, 2015.

25. Defendant accepted Shooter's Choice's request for a background check on Roof through NICS and undertook to conduct a background check on Roof through NICS on or about April 13, 2015.

26. The February 29, 2015 Roof arrest report created by the City of Columbia and noting Roof's possession of a controlled substance without a prescription and that Roof was charged with a felony crime was included in at least one of the databases maintained by Defendant for use in its background checks.

27. Based on the information contained in the February 29, 2015 Roof arrest report, namely that Roof was an unlawful user of or addicted to a controlled substance, Defendant was required to deny the sale of a firearm by Shooter's Choice to Roof because such sale was in violation of 18 U.S.C. § 922(d)(3).

28. Based on the information contained in the February 29, 2015 Roof arrest report, namely that Roof had been charged with a felony crime, Defendant was required to deny the sale of a firearm by Shooter's Choice to Roof because such sale was in violation of 18 U.S.C. § 922(d)(1).

29. Defendant has admitted that it should have denied the sale of a firearm by Shooter's Choice to Roof because such sale was in violation of the Brady Act, 18 U.S.C. § 922(d). See Statement of FBI Director James Comey Regarding Dylann Roof Gun Purchase, attached as Exhibit No. 1.

30. If Defendant had complied with the mandatory and non-discretionary duties and obligations it created and accepted, it would have denied the sale of a firearm by Shooter's Choice to Roof.

31. Defendant did not deny the sale of a firearm by Shooter's Choice to Roof.

32. Defendant's failure to deny the sale of a firearm by Shooter's Choice to Roof was a violation of Defendant's mandatory and non-discretionary duties set out in the Brady Act, 18 U.S.C. § 922(d), and the Code of Federal Regulations, 28 C.F.R. Part 25.

33. As a direct, proximate, and foreseeable result of Defendant's failure to deny the sale of a firearm by Shooter's Choice to Roof, in violation of the mandatory and non-discretionary duties of the Brady Act, 18 U.S.C. § 922(d), and the Code of Federal Regulations, 28 C.F.R. Part 25, Shooter's Choice completed the sale of a handgun to Roof on or around April 14, 2015.

34. On June 17, 2015, Roof walked into Emanuel AME Church in Charleston, South Carolina ("Mother Emanuel") and shot and killed nine people, including Tywanza Sanders, Plaintiff K.M.'s uncle, and Susie Jackson, Plaintiff K.M's great-aunt, while Plaintiff Felicia Sanders and Plaintiff K.M. were attending bible study at Mother Emanuel.

35. Roof used the handgun he illegally purchased from Shooter's Choice in the massacre at Mother Emanuel.

36. The Defendant had specific knowledge about Dylann Roof contained in a database.

37. The Defendant had notice or actual knowledge of Roof's admittance of possession of a controlled substance without a prescription for almost two months before he massacred nine people and harmed many others.

38. The Defendant had a duty to take affirmative action to deny the sale of the gun to Dylann Roof.

39. If the gun sale was denied as required, it would have prevented the foreseeable harm to those people affected by Dylann Roof's use of the obtained handgun.

40. This duty to take action and foreseeable harm triggered another duty to protect which duty was violated when Defendant failed to deny the handgun sale to Dylann Roof.

41. Roof was able to illegally purchase the handgun he used to kill nine people and wound others at Mother Emanuel because of Defendant's failure to deny the sale of the handgun to Roof by Shooter's Choice in violation of the mandatory and non-discretionary duties of the Brady Act, 18 U.S.C. § 922(d), and the Code of Federal Regulations, 28 C.F.R. Part 25.

42. As a direct, proximate, and foreseeable result of Defendant's failure to deny the sale of a firearm by Shooter's Choice to Roof, in violation of the mandatory and non-discretionary duties of the Brady Act, 18 U.S.C. § 922(d), and the Code of Federal Regulations, 28 C.F.R. Part 25, on June 17, 2015, Plaintiff K.M. was threatened with imminent death and sustained physical injuries as a result of the Mother Emanuel shooting.

43. Tywanza Sanders and Susie Jackson are dead, and Plaintiff K.M. witnessed the shooting and killing of nine people, including Plaintiff K.M.'s uncle and great-aunt.

44. Plaintiff K.M. sustained physical injuries and endured, and will in the future endure, pain and suffering, mental shock, emotional trauma, mental anguish, and other injuries.

45. Due to this event, Plaintiff K.M. has suffered permanent disability and will be required to expend sums of monies for treatment in addition to suffering a loss of enjoyment of life, deprived of the love and companionship of her uncle and great-aunt, and otherwise damaged.

## FOR A FIRST CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)

46. Plaintiff repeats and realleges Paragraphs 1 through 45 as though set forth herein verbatim, and would further allege:

## ALLEGATIONS RELATED TO FAILURE TO PROPERLY CREATE, MAINTAIN, INDEX, AND MANAGE DATABASES

47. Defendant owed duties to use due skill and care in creating, maintaining, indexing, and managing databases for background checks in accordance with Code of Federal Regulations, 28 C.F.R. Part 25.

48. Defendant's aforementioned duties of due skill and care were owed to Tywanza Sanders and Susie Jackson and to Plaintiff K.M as members of the general public and as victims of gun violence at the hands of persons who have illegally purchased firearms.

49. Defendant's aforementioned duties of due skill and care also arise from Defendant's relationship with Shooter's Choice, in that Defendant has agreed to create, maintain, index, and manage databases to insure that firearms sales are in compliance with federal and state law, including the Brady Act, 18 U.S.C. § 922(d) and the Code of Federal Regulations, 28 C.F.R. Part 25, and in that Defendant has in fact *required* all federally licensed firearms dealers in South Carolina, including Shooter's Choice, to use and rely

upon Defendant to create, maintain, index, and manage databases in accordance with Code of Federal Regulations, 28 C.F.R. Part 25.

50. Defendant's aforementioned duties of due skill and care also arise from Defendant's relationship with Roof in that Defendant has agreed to create, maintain, index, and manage databases to insure that such firearms sales are in compliance with federal and state law, including the Brady Act, 18 U.S.C. § 922(d) and the Code of Federal Regulations, 28 C.F.R. Part 25, and in that Defendant has in fact *required* all federally licensed firearms dealers in South Carolina, including Shooter's Choice, to use and rely upon Defendant to create, maintain, index, and manage databases in accordance with Code of Federal Regulations, 28 C.F.R. Part 25.

51. Defendant's aforementioned duties of due skill and care also arise from Defendant's voluntary undertaking and acceptance of the duty to create, maintain, index, and manage databases to insure that such firearms sales are in compliance with federal and state law, including the Brady Act, 18 U.S.C. § 922(d) and the Code of Federal Regulations, 28 C.F.R. Part 25, and the Defendant's *requirement* that all federally licensed firearms dealers in South Carolina, including Shooter's Choice, use and rely upon Defendant to create, maintain, index, and manage databases in accordance with Code of Federal Regulations, 28 C.F.R. Part 25.

52. Defendant's aforementioned duties of due skill and care also arise from Defendant's negligent creation of the risk by failing to properly create, maintain, index, and manage databases in accordance with Code of Federal Regulations, 28 C.F.R. Part 25.

53. Defendant's aforementioned duties of due skill and care also arise from the duties and obligations imposed upon Defendant by federal and state law, including the Brady Act, 18 U.S.C. § 922(d) and the Code of Federal Regulations, 28 C.F.R. Part 25.

54. Defendant breached its duty to Tywanza Sanders, Susie Jackson, and Plaintiff K.M. by acting in a negligent, careless, grossly negligent, and reckless manner in:

    a. Failing to properly create, maintain, index, and manage the databases used for background checks; and

    b. In such other negligent acts as may be disclosed during discovery.

### ALLEGATIONS RELATED TO FAILURE TO PROPERLY PERFOM BACKGROUND CHECKS

55. Defendant owed duties to use due skill and care in performing background checks on potential gun buyers to insure that such firearm sales are made in compliance with federal and state law, including the Brady Act, 18 U.S.C. § 922(d), and in denying the sale of firearms by licensed dealers to purchasers that violate federal or state law, including the Brady Act, 18 U.S.C. § 922(d).

56. Defendant's aforementioned duties of due skill and care were owed to Tywanza Sanders, Susie Jackson, and to Plaintiff K.M., as members of the general public and as victims of gun violence at the hands of persons who have illegally purchased firearms.

57. Defendant's aforementioned duties of due skill and care also arise from Defendant's relationship with Shooter's Choice, in that Defendant has agreed to perform all background checks to approve the sale of firearms by federally licensed firearms dealers, including Shooter's Choice, and to insure that firearms sales are in compliance with federal and state law, including the Brady Act, 18 U.S.C. § 922(d) and the Code of Federal Regulations, 28 C.F.R. Part 25, and in that Defendant has in fact *required* all

10

federally licensed dealers in South Carolina, including Shooter's Choice, to use and rely upon Defendant to perform all background checks to insure that firearms sales are in compliance with federal and state law, including the Brady Act, 18 U.S.C. § 922(d) and the Code of Federal Regulations, 28 C.F.R. Part 25.

58. Defendant's aforementioned duties of due skill and care also arise from Defendant's relationship with Roof in that Defendant has agreed to perform all background checks to approve the sale of firearms by federally licensed firearms dealers, including Shooter's Choice, to purchasers, like Roof, and to insure that such firearms sales are in compliance with federal and state law, including the Brady Act, 18 U.S.C. § 922(d) and the Code of Federal Regulations, 28 C.F.R. Part 25, and in that Defendant has in fact *required* all federally licensed firearms dealers in South Carolina, including Shooter's Choice to use and rely upon Defendant to perform all background checks on potential purchasers, like Roof, to insure that firearms sales are in compliance with federal and state law, including the Brady Act, 18 U.S.C. § 922(d) and the Code of Federal Regulations, 28 C.F.R. Part 25.

59. Defendant's aforementioned duties of due skill and care also arise from Defendant's voluntary undertaking and acceptance of the duty to perform background checks to approve the sale of firearms by federally licensed firearms dealers in South Carolina, like Shooter's Choice, and to insure that such firearms sales are in compliance with federal and state law, including the Brady Act, 18 U.S.C. § 922(d) and the Code of Federal Regulations, 28 C.F.R. Part 25, and by Defendant's *requirement* that all federally licensed firearms dealers in South Carolina, including Shooter's Choice, use and rely upon Defendant to perform all background checks to insure that firearms sales are in

compliance with federal and state law, including the Brady Act, 18 U.S.C. § 922(d) and the Code of Federal Regulations, 28 C.F.R. Part 25.

60. Defendant's aforementioned duties of due skill and care also arise from Defendant's negligent creation of the risk by failing to properly perform the background checks to insure that firearms sales are in compliance with federal and state law, including the Brady Act, 18 U.S.C. § 922(d) and the Code of Federal Regulations, 28 C.F.R. Part 25.

61. Defendant's aforementioned duties of due skill and care also arise from the duties and obligations imposed upon Defendant by federal and state law, including the Brady Act, 18 U.S.C. § 922(d) and the Code of Federal Regulations, 28 C.F.R. Part 25.

62. Defendant breached its duties to Tywanza Sanders, Susie Jackson, and Plaintiff K.M. by acting in a negligent, careless, grossly negligent, and reckless manner in:

    a. Failing to properly perform the background check for Roof;

    b. Failing to deny the sale of the handgun to Roof by Shooter's Choice; and

    c. In such other negligent acts as may be disclosed during discovery.

63. As a direct, proximate, and foreseeable result of the negligent, careless, grossly negligent, and reckless acts of Defendant set out above, Tywanza Sanders and Susie Jackson are dead, and Plaintiff K.M. witnesses the shooting ot Tywanza Sanders and Susie Jackson and has suffered severe and permanent injury.

64. As a result of the emotional distress caused by witnessing the murder of Tywanza Sanders and Susie Jackson, Plaintiff K.M. suffered physical symptoms capable of objective diagnosis.

65. Plaintiff K.M. has also suffered severe and permanent injury as a result of Defendant's (and/or its divisions, agents, and/or employees) negligent infliction of emotional distress

for which, Plaintiff Felicia Sanders, on behalf of Plaintiff K.M., is entitled to recover an amount of actual, special, and consequential damages to be determined by the trial of this action.

## FOR A SECOND CAUSE OF ACTION
(Negligence)

66. Plaintiff repeats and realleges Paragraphs 1 through 54 as though set forth herein verbatim, and would further allege:

67. As a direct, proximate, and foreseeable result of the negligence, carelessness, gross negligence, recklessness, and departures from duties by Defendant as noted above, Plaintiff K.M. has suffered harms and losses.

68. Plaintiff K.M.'s harms and losses suffered due to the close proximity to the shooting and a fear of being injured, include bur are not limited to:

    a. Personal injury;
    b. Pain and suffering ;
    c. Mental anguish;
    d. Loss of enjoyment of life;
    e. Medical expenses;
    f. Permanent impairment;
    g. Lost wages; and
    h. Loss of earnings capacity.

69. For which Plaintiff is entitled to recover an amount of actual, special, and consequential damages to be determined by the trial of this cause of action.

## FOR A THIRD CAUSE OF ACTION
(Necessaries)

13

70. Plaintiff repeats and realleges Paragraphs 1 through 68 as though set forth herein verbatim, and would further allege:

71. As a direct and proximate result of the acts and/or omissions as herein alleged on the part of Defendant in all paragraphs above, Plaintiff K.M, a minor child, has suffered the following damages, including, but not limited to:

    a. Substantial medical expenses that are reasonably certain to occur for the remainder of her life;

    b. Substantial care expenses that are reasonably certain to occur for the remainder of her life;

    c. Substantial loss of earnings and impairment of earning capacity that are reasonably certain to occur for the remainder of her life;

    d. Disability for K.M. likely to occur for the remainder of her life, including the necessity of psychiatric care;

    e. Substantial injury to her psyche and emotional state; and

    f. Substantial loss of enjoyment of life.

72. As a direct and proximate result of the acts and/or omissions as herein alleged on the part of Defendant in all paragraphs above, Plaintiff Felicia Sanders suffered the following damages, including, but not limited to:

    a. Substantial medical expenses for Plaintiff K.M. that are reasonably certain to occur before the age of 18;

    b. Substantial life care expenses for Plaintiff K.M. that are reasonably certain to occur before the age of 18;

    c. Care related to the disability of Plaintiff K.M. that is likely to occur before the age of 18, including the necessity of psychiatric care;

    d. Provision of extraordinary medical care for Plaintiff K.M.;

    e. Expenditure of economic resources to provide for Plaintiff K.M. before the age of 18, including, but not limited to, special education, assistance, or appropriate therapies which may alleviate some of the minor child's suffering due to the actions and/or inactions of Defendant.

73. Plaintiff Felicia Sanders is responsible for the medical bills, medical care, and overall care for Plaintiff K.M. until the child turns eighteen (18). If Plaintiff K.M. is under a disability, Plaintiff Felicia Sanders may be required to provide this care for an undetermined length of time after Plaintiff K.M. reaches the age of eighteen (18).

74. Plaintiff Felicia Sanders will suffer economic damages, including but not limited to, the provision of medical care, life care expense, psychiatric expense, counseling services, and special programs due to the actions and/or inactions of Defendant as delineated in all paragraphs above.

75. Plaintiff Felicia Sanders should be awarded any and all damages flowing from any necessaries claim or any other damages they suffer as a consequence of the actions and/or inactions of Defendant.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for all actual and compensatory damages for each specific occurrence of negligence pled in this Complaint to be determined by the trial of this action, the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

>By: s/Gedney M. Howe, III
>Gedney M. Howe, III (Fed Bar #1971)
>Law Offices of Gedney M. Howe,
>PO Box 1034
>Charleston, SC 29402
>Phone: 843-722-8048
>Fax: 843-722-2140 (fax)
>kleroy@gedneyhowe.com
>
>Andrew J. Savage, III
>Savage Law Firm
>15 Prioleau St.
>Charleston, SC 29401
>Phone: 843-720-7470
>Fax: 843-720-7478 (fax)
>Andy@savlaw.com
>
>Attorneys for Plaintiff

June 30, 2016

16