# Exhibit 10



# Audit of the Handling of Firearms Purchase Denials Through the National Instant Criminal Background Check System

Audit Division 16-32

September 2016

==When a potential purchaser is found to have a criminal history, the FBI's NICS Examiner is required to research the applicant's arrest record by contacting the listed arresting agencies by telephone, facsimile, e-mail, or through agency approved websites.==  Each Examiner is responsible for researching the criminal records for the prospective purchaser for each of the transactions by reviewing the information received, determining if additional information is needed from the responding source or another source, and conducting additional research as appropriate.  Currently, Examiners are not required to follow-up on research requests with unresponsive agencies.  Based on a study in 2006, the NICS Assessment Unit determined that manually sending second notices to unresponsive agencies was ineffective due to the time spent processing the notices and the low response from unresponsive agencies.  According to NICS management, eliminating the practice of sending second notices improved NICS efficiency in processing background checks within the 3 business days.  Nevertheless, in recognition of the need to revisit unanswered requests, NICS officials told us that as of August 2016 it was in the process of implementing a new NICS system, which has the capacity for an automated feature to send second facsimile notices to unresponsive agencies, if those agencies have agreed to receive follow-up requests.

To test this process and assess the factors that may prevent the FBI from reaching a timely decision on transactions, we requested the FBI hold records for 92,450 NICS transactions (47,908 initiated through the FBI and 44,542 initiated through state points of contact) that were open on the 88th calendar day, from September 15, 2013, through October 14, 2013, and 3 months' of data from November 2013, December 2013, and January 2014.  With assistance from FBI NICS Assessment Unit Staff, we tested a judgmental selection of 384 of the 47,908 open NICS transactions initiated through the FBI to determine whether the transactions remained open longer than necessary and whether the underlying firearm transfer should have been approved or denied.  Our sample included NICS checks initiated by all dealers represented in the universe of open NICS records.

Our analysis identified 9 of the 384 transactions (about 2 percent) that remained open longer than necessary because of errors and delays caused by the FBI Examiners.  With assistance from the NICS Assessment Unit Analysts and based on the information available at the time of our audit, we determined that three open transactions should have been approved because there was sufficient information in the case documentation to approve the transfers, but that they were not approved due to oversights on the part of the FBI Examiners.[30]

---

[30] Subsequent to the initial determination, the FBI received new information that supported denial of one of the three transactions.  The transaction was delayed to investigate an indication that the purchaser may be prohibited.  The file contained sufficient information at the time of the purchase to explain that the purchaser's rights had been restored and that the transaction should have been approved within the first 3 days.  After the 90-day period for additional research had expired, and after it had been determined that the transaction should have been approved, NICS received a different legal opinion regarding restoration of rights.  Because of our audit, the transaction was held in an open status.  As a result, NICS denied the transaction, and attempted to reach the dealer to determine if the firearm had been transferred, to no avail.  The FBI referred the transaction to ATF to investigate or retrieve as necessary.

the outcome of NICS background checks.  These factors are the datasets that the FBI includes in its NICS checks, and the ability to track the progress of external research to ensure that research requests are made in a timely manner, that requested information is received and evaluated in a timely manner, and that further research is conducted when needed.  We discussed the need for a tracking system to aid in the external research in an earlier section regarding open NICS transactions.  The NICS datasets are discussed in more detail below.

### FBI NICS Datasets

As identified previously, NICS primarily relies on data from three databases: (1) the Interstate Identification Index containing individual criminal history records; (2) National Crime Information Center records containing information on protective orders and active felony or misdemeanor warrants; and (3) the NICS Index containing information provided by federal, state, and local agencies on other prohibited persons such as illegal aliens, and persons who have renounced their citizenship, been adjudicated mentally defective, been dishonorably discharged from the military, or deemed controlled substance abusers.

During the course of our review, the FBI Inspection Division issued a report on NICS following the incident in Charleston, in which it discussed the National Data Exchange (N-DEX).[36]  The N-DEX is an FBI-developed repository of unclassified criminal justice records, available to the criminal justice community in a secure online environment.  N-DEX brings together federal, regional, state, local, and tribal justice agency data such as incident and case reports, arrest reports, traffic citations, and parole and probation information, and correlates relationships and resolves data from open and closed investigations to detect relationships between people, vehicles, property, locations, and crime characteristics.  ==According to the FBI Inspection Division report, N-DEX contained data that would have revealed the prohibiting incident report for the alleged shooter in the Charleston shooting.==  However, the N-DEX database is not included as a NICS dataset.  While the FBI Inspection Division report concluded that the NICS Examiner had performed as required in accordance with applicable policy and procedures, one of the FBI Inspection Division report's recommendations was that the NICS Section should seek to identify and review additional database resources or stakeholders both internal and external to the FBI.  FBI officials told us that as of August 2016, the NICS Section was unable to access N-DEX in order to conduct firearm background

---

[36]  On April 11, 2015, the alleged Charleston shooter attempted to purchase a firearm at a dealer in West Columbia, South Carolina.  The firearm application was referred to a NICS Examiner as the suspect's arrest record showed an arrest for a felony drug charge.  The arrest record, however, showed no conviction on the drug charge, so it was not by itself a basis to deny the firearm purchase.  The Examiner delayed the application and sought additional details on the arrest.  However, because the suspect's arrest record incorrectly showed the Lexington County Sheriff's Office as the arresting authority, the Examiner, after running down many leads with the local authorities, was unable to confirm the suspect's conviction or his admitted possession of a controlled substance within the 3 business day grace period that would have triggered a denial on the grounds that the suspect was an unlawful drug user or addict.