IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| FELICIA SANDERS, individually and as Legal Custodian of K.M., a minor, ) ) ) | Civil Action No. 2:16-cv-2356-RMG |
| Plaintiff,  ) ) ) | *consolidated with* 2:16-cv-2350; 2:16-cv-2351; 2:16-cv-2352; 2:16-cv-2354; 2:16-cv-2355; 2:16-cv-2357; 2:16-cv-2358; 2:16-cv-2359; 2:16-cv-2360; 2:16-cv-2378; 2:16-cv-2405; 2:16-cv-2406; 2:16-cv-2407; 2:16-cv-2409; and 2:16-cv-2746 |
| v.  ) ) ) | |
| THE UNITED STATES OF AMERICA, ) ) | |
| Defendant. ) ) ) | |
| This document pertains to all cases ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNITED STATES' MOTION TO QUASH PLAINTIFFS' RULE 30(b)(6) DEPOSITION NOTICE**

**I.     INTRODUCTION**

This Court should quash plaintiffs' seventeen-topic Rule 30(b)(6) deposition notice (served on April 25, 2017, and requesting a deposition on May 16, 2017) because each and every topic identified by plaintiffs is duplicative or cumulative of one, or more, interrogatories or requests for production served by plaintiffs on April 7, 2017; because plaintiffs may obtain all information sought in their notice through another discovery means that is more convenient, less burdensome, and less expensive; and because many of plaintiffs' requests are so overly broad, vague, and ambiguous such that they do not "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 26(b)(2)(C)(i); 30(b)(6). The United States is preparing its responses and objections to plaintiffs' interrogatories and requests for production. The logical and efficient process is to have plaintiffs' review those responses once received and then, if necessary, propound additional discovery. Forcing the United States to prepare one, or more,

officers, directors, managing agents, or other designated individuals for a deposition covering broad, ill-defined, topics is inefficient and inconsistent with the rules. Thus, the United States respectfully requests that this Court quash plaintiffs' notice or enter a protective order precluding the requested deposition. Fed R. Civ. P. 26(c).

## II.  SUMMARY OF THE NATURE OF THE CASE

Plaintiffs brought these actions against the United States alleging jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671-2680. Plaintiffs allege that they, or members of their families, were harmed in Dylann Roof's June 17, 2015, shooting rampage at the Emanuel African Methodist Episcopal ("AME") Church in Charleston, South Carolina. Claiming that employees of the Federal Bureau of Investigation ("FBI") negligently failed to prevent Roof's purchase of the gun he used in the shootings, plaintiffs seek awards of damages against the United States for wrongful death, pain and suffering, and/or loss of consortium.

The United States moved to dismiss plaintiffs' actions for lack of subject-matter jurisdiction and for failure to state a claim. *See generally* Mot. to Dismiss, ECF No. 12. The Court denied in part, without prejudice, the United States' motion to dismiss to permit jurisdictional discovery on two issues. Order of Mar. 23, 2017, ECF No. 27. Specifically, the Court permitted limited jurisdictional discovery into "(1) the background check on Dylann Roof initiated in April, 2015, and (2) the policies, protocols, and procedures governing maintenance of data used for that background check." *Id.* at 7-8. The parties are currently engaged in that jurisdictional discovery.

## III.  RELEVANT FACTUAL BACKGROUND

On March 31, 2017, counsel for the parties held an informal telephonic discovery

conference in light of the Court's March 23, 2017, opinion and order. Terrell Decl. ¶ 3, attached hereto as Ex. A. One of the United States' objectives on the call was to identify plaintiffs' narrowly-tailored discovery needs such that they could obtain information necessary to address the United States' jurisdictional challenge. *Id.* In furtherance of this objective, on March 31, 2017, by Federal Express, the United States voluntarily produced a redacted version of the Federal Bureau of Investigation's Inspector's Report, "A Review of the CJIS Division's National Instant Criminal Background Check System (NICS) in Clarksburg, West Virginia," including appendices. Mar. 31, 2017, Ltr. from Terrell to Howe, attached hereto as Ex. B. The report and its appendices total 227 pages. Terrell Decl. ¶ 6. The report was the outgrowth of a comprehensive review of the Roof background check ordered by Director Comey. *See* July 10, 2015, Comey Statement, ECF No. 1-1 ("I have directed a full review of the matter by our Inspection Division and given them 30 days to report back to me. I will provide an update to you."). The report, and appendices, include, amongst other materials, the National Instant Criminal Background Check System ("NICS") case history report for the Roof background check and relevant NICS Standard Operating Procedures ("SOPs") in place at the time of the Roof background check. Terrell Decl. ¶ 6.

On April 6, 2017, counsel for the parties had a follow-up informal telephonic discovery conference. *Id.* ¶ 7. On that call, counsel for plaintiffs informed counsel for the United States that they would seek "formal" discovery in addition to the Inspection Division report and its appendices. *Id.* On April 7, 2017, plaintiffs transmitted by electronic mail, and served by United States mail, twenty-three interrogatories and twenty-eight requests for production of documents. Ex. C (interrogatories); Ex. D (requests for production). By rule, the United States has until May 10, 2017, to serve its written responses to these discovery requests. Fed R. Civ. P. 6(d);

- 3 -

33(b)(2); 34(b)(2)(A).  The United States is currently preparing its responses and objections to plaintiffs' requests.

On April 25, 2017, prior to receiving the United States' responses to their interrogatories and requests for production, plaintiffs transmitted by electronic mail, and served by United States mail, a seventeen-topic Rule 30(b)(6) deposition notice.  Ex. E.  The notice requests that the deposition(s) commence on May 16, 2017.  *Id.*  As set forth in greater detail herein, each topic in the Rule 30(b)(6) notice is identical to, or cumulative of, one or more interrogatories or requests for production.

The United States notified plaintiffs' counsel on April 27 and 28, 2017, that the United States objects to the Rule 30(b)(6) notice, explained the basis for its objection, and requested that plaintiffs withdraw the notice.  Terrell Decl. ¶¶ 8-9.  Counsel conferred in good faith to try to resolve the matter informally, without court action, but plaintiffs refuse to withdraw the notice. *Id.* ¶ 9.  Accordingly, the United States now brings this motion.

## IV.    ARGUMENT

### A.    The Court should quash the notice because it is unreasonably cumulative or duplicative.

Discovery is not permissible if it is "unreasonably cumulative or duplicative," Fed. R. Civ. P. 26(b)(2)(C)(i), and, on motion, the Court may enter an order "forbidding the . . . discovery," or "prescribing a discovery method other than the one selected by the party seeking discovery," *id.* 26(c)(1).  *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004). Here, plaintiffs will obtain information bearing upon "(1) the background check on Dylann Roof initiated in April, 2015, and (2) the policies, protocols, and procedures governing maintenance of data used for that background check," Order of Mar. 23, 2017, 7-8, through the United States' responses to their interrogatories and requests for production, and each and every Rule 30(b)(6)

topic is duplicative of those requests or merely cumulative of one, or more, requests. Because plaintiffs will obtain jurisdictional information through written discovery, the rules do not permit plaintiffs to obtain the same information through a deposition. *Nicholas*, 373 F.3d at 543 (quashing subpoena for a Rule 30(b)(6) deponent where requesting party had already conducted depositions and received documents in discovery).

Several of plaintiffs' Rule 30(b)(6) topics are simply "cut-and-pasted" from their written discovery requests, and each topic is duplicative of or cumulative of a written discovery request:

| CUMULATIVE AND DUPLICATIVE RULE 30(b)(6) TOPICS ||
|---|---|
| **Rule 30(b)(6) Topic** | **Cumulative or Duplicative Interrogatory or Request for Production** |
| a.     The exact reason why the FBI examiner did not contact the City of Columbia Police Department when she was specifically told to do so by facsimile from Lexington County Sherriff's Office on April 13, 2015. | Interrogatory 9.  Why did the FBI Examiner not contact the City of Columbia Police Department when she was specifically told to do so by facsimile from the Lexington County Sherriff's Office on April 13, 2015? |
| b.     All policies, procedures, standard operating procedures, SOP's, guidelines, handbooks, manuals, policy statements or like which were in effect as of April 11, 2015 and applicable to NICS examiners conducting background checks for a proposed firearm transfer. | Request for Production 10.  Please produce all policies, procedures, standard operating procedures, SOP's, guidelines, handbooks, manuals, desk books, policy statements, or the like, including all appendices, addenda, or other support for the same (hereinafter collectively referred to as "Policy") related to, touching upon, or guiding the agents, employees, and representatives of Defendant and its agencies, including NICS examiners, involved in conducting background checks for a firearm sale, in effect from February 27, 2017, to the present time . . . . |
| c.     All policies, procedures, standard operating procedures, guidelines, handbooks, manuals, policy statements or like which were in effect as of April 11, 2015, and applicable to the Legal Instruments Examiners review of transactions in the delay queue, to include but not limited to Region Alignment. | Request for Production 11.  All Policies governing the review of legal instruments examiners by region.

Request for Production 12.  All Policies governing the review of legal instrument examiners in Region 2 of the delay queue. |

| | |
|---|---|
| d.    All policies, procedures, standard operating procedures, guidelines, handbooks, manuals, policy statements or like which were in effect as of April 11, 2015 and applicable to Region 2 of the Region Alignment for Legal Instruments Examiners' review of transactions in the delay queue. | Request for Production 11. All Policies governing the review of legal instruments examiners by region.<br><br>Request for Production 12. All Policies governing the review of legal instrument examiners in Region 2 of the delay queue. |
| e.    All databases, managed by the FBI, containing information provided by federal and state agencies about person prohibited under federal law from receiving or possessing a firearm. | Interrogatory 20. Please list all databases available to Defendant and its agencies, including the FBI and/or the NICS that contain information about persons prohibited under federal or state law from purchasing, receiving, or possessing a firearm. |
| f.    The exact manner and method and/or procedure and/or policy of the FBI for maintaining data integrity during all NICS operations that are managed and carried out by the FBI, including insuring the accurate adding, canceling, or modifying of NICS index records supplied by federal agencies and quality control checks in the form of periodic internal audits by FBI personnel to verify that the information provided to the NICS index remained and remains valid and correct. | Interrogatory No. 12. Please state the person or persons responsible for maintaining the data integrity of databases used during all NICS operations that are managed and carried out by the FBI.<br><br>Interrogatory No. 13. Please state the person or persons responsible for insuring the accurate adding, canceling or modifying of NICS Index records.<br><br>Interrogatory No. 14. Please state the person or persons responsible for carrying out quality control checks and/or periodic internal audits designed to verify that the information and data contained in the NICS Index System and used by NICS Examiners remains correct, current, up-to-date, complete and inclusive. |
| g.    The exact databases searched by the NICS Operation Center upon receiving the request for a background check for the proposed sale of a firearm to Dylann Roof on or about April 11, 2015 and thereafter, including but not limited to the contents of such databases. | Interrogatory 20. Please list all databases available to Defendant and its agencies, including the FBI and/or the NICS that contain information about persons prohibited under federal or state law from purchasing, receiving, or possessing a firearm.<br><br>Request for Production No. 1. Please produce any and all documents related to or touching upon reviews or investigations of the gun sale to and background check of Dylann Roof that were conducted by the Defendant or by |

- 6 -

| | |
|---|---|
| | anyone acting on behalf of or at Defendant's request, including but not limited to any NICS case history report or similar report. |
| h.     The manner and method and person or persons or organizations responsible for insuring and verifying the accuracy of the information on contact sheets used by NICS examiners during NICS operations including but not limited to requests for a background check on a proposed firearm transfer. | Interrogatory No. 14.  Please state the person or persons responsible for carrying out quality control checks and/or periodic internal audits designed to verify that the information and data contained in the NICS Index System and used by NICS Examiners remains correct, current, up-to-date, complete and inclusive.

Interrogatory No. 15. Please state when and how often quality control checks or periodic internal audits set forth in the preceding interrogatory are made, including but not limited to the date of the last periodic internal audit made prior to August 11, 2015. |
| i.      The exact reasons and/or person or persons who determined that the NDEX would not be included as a NICS database and/or in the NICS data set. | Interrogatory No. 19.  Please state the name of the person or persons who determined that the NDEX would not be included as a NICS data set. |
| j.      All documentation on or prior to April 11, 2015 related to or touching upon the arrest of Dylann Roof including any police report or incident report including but not limited to when such documents and data were received and how and from what source it was transmitted and to which database it was transmitted (particularly including any report from the Columbia Police Department or the Lexington County Police Department). | Interrogatory No. 21.  With regards to all documentation and data contained in the N-DEX on or prior to April 11, 2015 related to or touching upon the arrest of Dylann Roof, including any police report or incident report, please identify when such documents or data was received and how and from what source it was transmitted to the N-DEX.

Interrogatory No. 22.  With regards to all documentation and data received from the Columbia Police Department regarding Dylann Roof at any database maintained by Defendant or its agencies, the FBI and/or the NICS, please identify when such documents or data were received and how and from what source they were received.

Interrogatory No. 23.  With regards to all documentation and data received from the Lexington County Police Department regarding Dylann Roof at any database |

| | |
|---|---|
| | maintained by Defendant or its agencies, the FBI and/or the NICS, please identify when such documents or data were received and how and from what source they were received. |
| k.     All aspects of the investigation of the gun sale to and background check of Dylann Roof that were conducted by Defendant or anyone acting on behalf of the Defendant or at Defendant's request and all information and conclusions of and from such investigation. | Request for Production No. 1.  Please produce any and all documents related to or touching upon reviews or investigations of the gun sale to and background check of Dylann Roof that were conducted by the Defendant or by anyone acting on behalf of or at Defendant's request, including but not limited to any NICS case history report or similar report. |
| l.     Any and all reports, including appendices generated from any and all reviews or investigations of the gun sale to and background check of Dylann Roof that were conducted by the Defendant or anyone acting on behalf or at the Defendant's request including drafts and final reports and all information considered whether included in the final report or not and all inclusions of said report. | Request for Production 2.  Please produce any and all reports, including appendices, generated from any and all reviews or investigations of the gun sale to and background check of Dylann Roof that were conducted by the Defendant or by anyone acting on behalf of or at Defendant's request, including but not limited to inspection division report and/or investigation division report and/or any internal FBI review and/or similar reports.  The request includes both drafts and final reports. |
| m.     The entire file on the firearms sale to and background check of Dylann Roof in Defendant's possession, custody or control. | Request for Production 3.  Please produce the entire file on the firearm sale to and background check of Dylann Roof that is in Defendant's possession, custody, or control to include, but no limited to, the file created by the National Instant Criminal Background Check System [NICS] Operation Center. |
| n.     The entire file of the NICS examiner(s) including any notes, comments and/or correspondence by the examiner(s) generated during the background check of Dylann Roof. | Request for Production 4.  Please produce the entire file of the NICS examiner(s) including any notes, comments, and/or correspondence by the examiner(s) generated during the background check of Dylann Roof. |
| o.     Any and all correspondence, documents, data, emails or any other tangible materials of electronically stored information | Request for Production 5.  Please produce all statements taken from the examiner(s) or any other agents, employees, or representatives of |

| | |
|---|---|
| that relate to or touch upon any and all activities by an employee, agent, or representative of Defendant or its agencies after June 17, 2015, related to Dylann Roof. | Defendant or its agencies or from any witness to this matter, including statements taken both prior to and after the June 17, 2015, shooting at Mother Emanuel Church that relate to or touch upon the background check of Dylann Roof or any subsequent investigation into that background check. |
| p.    The manner and method of production of contact sheets, contact lists and/or POC list(s) utilized by NICS examiners in the firearms sale background check of Dylann Roof, including all versions available to the examiner from April 11 - 20, 2015. | Request for Production 8.  Please produce the contact sheet(s), contact list(s), and/or POC list(s) reviewed or utilized by the NICS examiner(s) in the firearm sale background check of Dylann Roof, including all versions available to the examiner from April 11-20, 2015, and including the Lexington County contact sheet. |
| q.    All policies, procedures, standard operating procedures, SOP's, guidelines, handbooks, manuals, desk books, policy statements, or the like, including all appendices, addenda, or other support for the same (hereinafter collectively referred to as "Policy") related to, touching upon, or guiding the agents, employees, and representatives of Defendant and its agencies, including NICS examiners, involved in conducting background checks for a firearm sale, in effect from February 27, 2015 to the present time, including but not limited to:<br>    1.    SOP Numbers 5.5.4, 5.5.5, and 5.15 referenced on Pages 27 and 27 of the Department of Justice, Federal Bureau of Investigation, Inspection Division, Office of Inspections Report;<br>    2.    Any other Policy referenced in the INSD Report, including the appendices to the same;<br>    3.    Any Policy related to or touching upon the NICS examiner's in-house or external research;<br>    4.    Any Policy related to or touching upon the NICS examiner's in-house or external research regarding who should be contacted by the examiner in performing background checks, including contacts with | Request for Production 10.    Please produce all policies, procedures, standard operating procedures, SOP's, guidelines, handbooks, manuals, desk books, policy statements, or the like, including all appendices, addenda, or other support for the same (hereinafter collectively referred to as "Policy") related to, touching upon, or guiding the agents, employees, and representatives of Defendant and its agencies, including NICS examiners, involved in conducting background checks for a firearm sale, in effect from February 27, 2015 to the present time, including but not limited to:<br>    a.    SOP Numbers 5.5.4, 5.5.5, and 5.15 referenced on Pages 27 and 27 of the Department of Justice, Federal Bureau of Investigation, Inspection Division, Office of Inspections Report entitled "A Review of the CJIS Division's National Instant Criminal Background Check System (NCIS) in Clarksburg, West Virginia," including the Appendices to the same, and produced as FBI-00000147 to FBI-00000146 (hereinafter the "INSD Report");<br>    b.    Any other Policy referenced in the INSD Report, including the Appendices to the same;<br>    c.    Any Policy related to or |

| | |
|---|---|
| local, state and/or any other law enforcement agencies or courts in an effort to determine if there is a disqualifying report, prohibition and/or prohibitive criteria to support a determination that the receipt or transfer of a firearm would be in violation of federal or state law;<br>      5.     Any Policy related to or touching upon the discovery of an additional contact not listed on the NICS examiner's contact sheet, including whether such newly discovered contact should be contacted;<br>      6.     Any Policy related to or touching upon whether the NICS examiner is required to contact persons or entities identified by others but not listed on the contact sheet for a particular county; and<br>      7.     Any Policy related to or touching upon research and/or searches performed by NICS Examiners on background checks after the three day Brady Act deadline has passed, background checks that have been placed in the delay queue, and/or background checks on days 4 to 30 and/or days 31 to 88. | touching upon the NICS examiner's in-house or external research;<br>      d.     Any Policy related to or touching upon the NICS examiner's in-house or external research regarding who should be contacted by the examiner in performing background checks, including contacts with local, state and/or any other law enforcement agencies or courts in an effort to determine if there is a disqualifying report, prohibition and/or prohibitive criteria to support a determination that the receipt or transfer of a firearm would be in violation of federal or state law;<br>      e.     Any Policy related to or touching upon the discovery of an additional contact not listed on the NICS examiner's contact sheet, including whether such newly discovered contact should be contacted;<br>      f.     Any Policy related to or touching upon whether the NICS examiner is required to contact persons or entities identified by others but not listed on the contact sheet for a particular county; and<br>      g.     Any Policy related to or touching upon research and/or searches performed by NICS Examiners on background checks after the three day Brady Act deadline has passed, background checks that have been placed in the delay queue, and/or background checks on days 4 to 30 and/or days 31 to 88. |

Because each deposition topic identified by plaintiffs in their notice duplicates a prior written discovery request, the Court may quash the notice and issue a protective order precluding the deposition at this time. *See Nicholas*, 373 F.3d at 543 (quashing subpoena for a Rule 30(b)(6) deponent where requesting party had already conducted depositions and received documents in discovery); *Versata Software v. Internet Brands, Inc.*, No. 11-mv-50844, 2011 WL 4905665, at *2 (E.D. Mich. Oct. 14, 2011) (finding information could be obtained from, *inter*

*alia*, the responding party's document production); *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 75 (D. Conn. 2010) (Rule 30(b)(6) notice topic quashed where information "already obtained from some other source that is more convenient and less burdensome."). Thus, the Court should quash the notice as "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(ii).

### B. The Court should quash the notice because plaintiffs can obtain the same information by means that are more convenient and less burdensome.

In addition to, and because, plaintiffs' Rule 30(b)(6) notice is duplicative and cumulative, the Court may also quash the subpoena because plaintiffs can obtain jurisdictional information through discovery means that are more convenient and less burdensome: the United States' responses to their interrogatories and request for production. Many of plaintiffs' deposition topics concern NICS policies, all of which are written. *See* Topics b, c, d, f, q. Any designated deponent would simply read the written policies if asked questions on these topics at a deposition. Many other topics focus exclusively on documents. *See* Topics j, l, m, o. The documents the United States has and will produce in discovery speak for themselves, and any designated deponent would simply identify and refer to produced documents in response to deposition questions. Because plaintiffs seek documents and policies, the logical solution is to await the United States' responses to plaintiffs' requests for production of documents, rather than deposing a witness on those documents. Courts may prohibit Rule 30(b)(6) depositions where the deponent would simply read copious amounts of documents or summarize vast amounts of information contained in documents. *See*, *e.g.*, *Wolfe v. Ford Motor Co.*, No. 06-1217- MLB, 2008 WL 294547, at *2 (D. Kan. Feb. 1, 2008) (denying motion to compel because the desired information "can also be obtained by a review of the documents previously produced by Ford, a source less burdensome and/or less expensive"); *United States ex. rel. Fago v. M & T Mortg. Corp.*, 235 F.R.D. 11, 25 (D.D.C. 2006) ("Without a photographic memory, [the witness] could

not reasonably be expected to testify as to the loan numbers . . . for sixty-three different loans.").

In *EEOC v. Pinal County*, 714 F. Supp. 2d 1073 (S.D. Cal. 2010), the court denied the proposed deposition of the Acting Director of the San Diego office of the EEOC in an action brought by an employee against the county, seeking clarification of the EEOC's interpretation of the EEOC determination letter because it was unreasonably cumulative, duplicative, and sought information that could have been obtained from some other source that was less burdensome. *Id.* at 1078.  Here, asking a deponent for an interpretation of written NICS policies or the final Investigation Division report would be similarly broad and burdensome.  *See* Topics b, c, d, l, q.  The documents speak for themselves, and the Court's discretionary function analysis necessarily must train on the applicable statutes, regulations, and written policies.  *See Autery v. United States*, 992 F.2d 1523, 1528 (11th Cir. 1993) ("It is the *governing administrative policy*, not the Park Service's knowledge of danger, however, that determines whether certain conduct is mandatory for purposes of the discretionary function exception.") (emphasis added).

The Court should therefore hold in abeyance plaintiffs' Rule 30(b)(6) notice because plaintiffs will obtain relevant jurisdictional information through the United States' document productions and interrogatory responses, discovery means that are substantially more convenient and less burdensome.  Fed. R. Civ. P. 26(b)(2)(C)(i).

### C.     In any event, plaintiffs' requests are overly broad, vague, and ambiguous.

Answers given by Rule 30(b)(6) deponents bind the entity, if at all, only on "noticed topics reasonably available" to the entity.  *Ethox Chem., LLC v. Coca-Cola Co.*, Civ. No. 6:12-1682-TMC, 2014 WL 2719214, at *2 (D. S.C. June 16, 2014).  Accordingly, Rule 30(b)(6) requires the noticing party to "describe *with reasonable particularity* the matters for examination."  Fed. R. Civ. P. 30(b)(6) (emphasis added).  The Court may quash plaintiffs' deposition notice because they failed to comply with this requirement.

The obligations imposed by Rule 30(b)(6) are "not infinite." *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 38 (D. Mass. 2001). Because of the potentially binding nature of properly noticed Rule 30(b)(6) testimony, courts are careful to limit overly broad or unduly burdensome requests. Where a responding party to a Rule 30(b)(6) notice cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible. *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000). In *Reed*, the court found plaintiff's Rule 30(b)(6) notice to be overbroad because the notice indicated that the listed areas of inquiry would "include, but not be limited to" the areas specifically enumerated in the notice. *Id.* Here, plaintiffs' topics include similar overly-expansive phraseology.

In other discovery contexts, courts routinely hold that discovery requests seeking information or documents "related to," "concerning," or "touching upon" a subject are overly broad. *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) (upholding district court's determination that "requests for all communications . . . were overbroad") (internal quotation marks omitted); *State Farm Fire & Cas. Co. v. Admiral Ins. Co.*, No. CV 4:15-2745-RMG, 2016 WL 8135417, at *7 (D. S.C. Feb. 4, 2016) ("relate[d] to the allegations" is too vague to understand without guessing); *Great Lakes Transp. Holding LLC v. Yellow Cab Serv. Corp. of Fla., Inc.*, No. 10-cv-80241, 2010 WL 5093746, at *6 (S.D. Fla. Dec. 8, 2010) (The "document requests use the terms 'relate to' or 'concerning' in a way that makes the requests overbroad, vague, and ambiguous. Because these terms are broad, they might well encompass irrelevant information. . . . Nor can Defendants be certain exactly what information the discovery requests cover and therefore what information is responsive."); *Sonnino v. Univ. of Kan. Hosp. Auth.*, No. 02-cv-2576-KHV-DJW, 2004 WL 764085, at *5 (D. Kan. Apr. 8, 2004) (request for production seeking "all documents that relate to or concern" a particular topic was "overly broad on its

face"); *Cherrix v. True*, 177 F. Supp. 2d 485, 494 (E.D. Va. 2001) ("Petitioner's request to compel production of all the documents that *refer or relate to any of the items* contained on the list casts far too wide a net.") (emphasis in original); *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 322 (D. Kan. 1998) (denying motion to compel a response to interrogatory asking plaintiff to "describe all communications" regarding a particular issue as unduly burdensome). Here, most of plaintiffs' topics are so overly broad and vague such that the United States cannot reasonably prepare a deponent to sit for the deposition. *See* Topics b ("All policies, procedures, . . ."); c (same); d (same); e (same); j (". . . related to or touching upon . . ."); l (". . . drafts and final reports and all information considered . . ."); o (". . . relate to or touch upon . . ."); q (". . . related to, touching upon or guiding . . .").

The Court ordered limited jurisdictional discovery to address discrete issues raised in the United States' motion to dismiss. The purpose of the limited jurisdictional discovery is to assess "[w]hether the examiner should have, or could have, acted differently under the 'circumstances'," and "[w]hether the challenged database maintenance conduct" is subject to the discretionary function exception. Order of Mar. 23, 2017, 7. Against this backdrop of the narrow scope of permissible jurisdictional discovery, plaintiffs' Rule 30(b)(6) topics are excessively broad and unwarranted. Plaintiffs will obtain the jurisdictional information they need from the United States' responses to their interrogatories and requests for production.

A wholesale fishing expedition into, for example, "[a]ny and all reports . . . from any and all reviews or investigations . . . including draft reports and all information considered whether included in the final report or not and all inclusions of said report," Topic l, is improper. That topic could reasonably be interpreted to include the United States' entire investigation, preparation for, and prosecution of Roof in the criminal trial, which has nothing to do with the

- 14 -

jurisdictional issues in these cases. Also, an after-the-fact investigation has no bearing on what the NICS examiner "should have, or could have" done in April 2015. This, and other topics, are facially overbroad. The Court may alternatively quash the Rule 30(b)(6) deposition notice because plaintiffs fail to "describe with reasonable particularity the matters for examination."

## V.     CONCLUSION

The Court ordered limited jurisdictional discovery related to the United States' discretionary function exception challenge to its subject-matter jurisdiction. The United States will provide all relevant jurisdictional facts in response to plaintiffs' interrogatories and request for production. Accordingly, plaintiffs' Rule 30(b)(6) notice, seeking the same information, is cumulative and duplicative. Plaintiffs can obtain the information they seek through means that are more convenient and less burdensome. Moreover, plaintiffs' Rule 30(b)(6) topics are overly broad, vague, and ambiguous. For these reasons, the Court should quash plaintiffs' Rule 30(b)(6) notice.

DATED this 28th day of April, 2017.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch

RUPERT M. MITSCH
Assistant Director, Torts Branch

 s/ Stephen R. Terrell
STEPHEN R. TERRELL
Trial Attorney
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 888

- 16 -

    Washington, DC 20044
    Stephen.Terrell2@usdoj.gov
    (202) 353-1651

2:16-cv-02356-RMG     Date Filed 04/28/17     Entry Number 31-1     Page 16 of 16