UNCLASSIFIED//FOR OFFICIAL USE ONLY

## INSPECTION DIVISION
## OFFICE OF INSPECTIONS



## INSPECTOR'S REPORT
## A REVIEW OF THE CJIS DIVISION'S NATIONAL INSTANT CRIMINAL BACKGROUND CHECK SYSTEM (NICS) IN CLARKSBURG, WEST VIRGINIA



Nancy McNamara
Assistant Director
Inspection Division

UNCLASSIFIED//FOR OFFICIAL USE ONLY

**SUBJECT TO PROTECTIVE ORDER**

**FBI-00000149**

UNCLASSIFIED//FOR OFFICIAL USE ONLY

## TABLE OF CONTENTS

I. EXECUTIVE SUMMARY ................................................................................................ 2
II. SCOPE AND METHODOLOGY .................................................................................... 6
III. THE ROOF CASE ........................................................................................................... 11
IV. FINDINGS ........................................................................................................................ 17
V. CONCLUSION ................................................................................................................ 35
VI. APPENDICES .................................................................................................................. 36

    A. Federal Prohibitors
    B. NICS Process Work Flow
    C. Dylann Storm Roof Shooting - Time Line
    D. NCIC Printouts for Roof
    E. Fax to Lexington County Sheriffs Office
    F. Fax to West Columbia Police Department
    G. Fax to Columbia Police Department (6/26/15) - Final Disposition Report & Columbia PD Incident Report
    H. NICS 2014 Unresolved NICS Federal Firearm Background Checks
    I. Examiner Production, Accuracy, and Compliance: Cascading Goals Addendum
    J. Binder - Standard Operating Procedures (SOP)
    K. Binder - Roof Case

UNCLASSIFIED//FOR OFFICIAL USE ONLY

1

SUBJECT TO PROTECTIVE ORDER

FBI-00000150

UNCLASSIFIED//FOR OFFICIAL USE ONLY

I. **EXECUTIVE SUMMARY**

(U//FOUO) **Background:** At the request of the Director, INSD conducted a special review of the Criminal Justice Information Services (CJIS) Division's National Instant Criminal Background Check System (NICS) Section in relation to the purchase of a handgun by Dylann Roof, the subject in the 06/17/2015 Emmanuel African Methodist Episcopal (AME) Church shooting in Charleston, SC. This review commenced on 07/14/2015. INSD traveled to CJIS on 07/20/2015 and conducted leadership and staff interviews; reviewed Standard Operating Procedures (SOPs); and assessed the NICS computerized database system.

(U//FOUO) **Scope and Objectives:** INSD's special review focused on NICS protocols and procedures to assess: (1) the availability and timeliness of actionable intelligence; (2) coordination and information sharing between CJIS and law enforcement agencies; and (3) CJIS Division's oversight and program management preceding the 06/17/2015 church shooting incident. INSD identified Issues and Recommendations which are detailed herein.

(U//FOUO) **Overview of NICS:** NICS is a DOJ program designed to keep firearms from criminals, the mentally ill, illegal aliens, and people who have renounced their U.S. Citizenship or violate a number of State specific prohibitors. NICS is utilized to determine qualification for receiving or possessing firearms according to federal guidelines. The NICS process includes searching, at a minimum, three federally maintained databases. If applicant identifiers match any entries in the federally maintained databases, a designated set of databases, the "External Manual and Automated Databases," are cross-referenced for resolution.

(U//FOUO) **NICS Section Structure:** [REDACTED (H)] full-time Examiners range in grade from GS-6 to GS-9. Examiners are assigned to the NICS Section, within the CJIS Division at Clarksburg, West Virginia. The Examiners are divided into various NICS program roles, to include, the Research and Analysis Team; Appeal Services and Explosives; Command Center; Regional Coordinators; and NICS Index Team. Additionally, NICS manages three regional contract Call Centers, which employ approximately [REDACTED (H)] Customer Service Representatives (CSSR).

(U//FOUO) **NICS Process:** A NICS background check inquiry can follow several paths from inquiry to resolution. To initiate a firearms background check, an applicant must show the Federal Firearms Licensee (FFL) an approved form of photo identification and provide name, sex, race, date of birth, and the state of residence as required on ATF Form 4473. A NICS Transaction Number (NTN) is provided to the FFL and must be recorded on ATF Form 4473. NICS requested applicants submit additional descriptors and unique identifiers to assist in discerning between similar records, because NICS utilized a descriptive based search. The NICS response to

UNCLASSIFIED//FOR OFFICIAL USE ONLY

**SUBJECT TO PROTECTIVE ORDER**

**FBI-00000151**

UNCLASSIFIED//FOR OFFICIAL USE ONLY

an inquiry consisted of a notice to the FFL stating the transfer of the firearm may Proceed, is Denied, or was Delayed pending further review. FFLs were permitted to legally transfer weapons when the NICS response is Proceed or if exceeding three business days from a Delayed inquiry. The criterion for denying a transfer was based on ten federal prohibitors, as well as, additional state specific prohibitors

(U//FOUO) **NICS Section Business Process:** NICS operates from 8 am EST to 1 am EST, seven days a week, every day with the exception of Christmas. A NICS inquiry is processed by either CJIS/NICS or a designated state point of contact, which involves state employees querying NICS and conducting the necessary follow up. Thirty six states opted for the FBI to provide the firearms background check function. For the inquiries processed by NICS, the FFL can contact NICS via telephone (Call Centers) or submit requests through the NICS E-Check[1] automated service. At the NICS Section, Examiners work the inquiry through resolution or until all logical leads are awaiting external response. During some periods (typically weekends or evenings), Examiners triage incoming matters to determine if the inquiry can be either Proceeded or Denied. If the inquiry is Delayed, the inquiry is placed in the appropriate regional queue for in-depth research regarding laws or prohibitions specific to a state or region. This was the case in the Roof matter.

(U//FOUO) **Roof Case:** On Saturday, 04/11/2015, Roof attempted to purchase a .45 caliber Glock handgun at a gun store in West Columbia, South Carolina. Roof's information was checked in the National Instant Crime Background Check System (NICS) as required by law and Delayed due to potential prohibitors. On the next business day, Monday, 04/13/2015, a Examiner at the CJIS facility in West Virginia, began to process the inquiry. The initial check of Roof's criminal history indicated he was arrested for a felony drug charge. This charge was not enough to Deny proceeding with the transaction and required further inquiry. The Examiner reviewed Roof's criminal history and determined the arresting agency listed on Roof's criminal record was the Lexington County Sheriff's Office (LCSO).

(U//FOUO) The Examiner determined a case disposition was not listed, then faxed a request to the Lexington County Sheriffs Office (LCSO) requesting more details on the case. Next, the Examiner faxed a similar request to the Lexington County Prosecutor's Office. The LCSO contacted the Examiner and advised the case did not belong to them, and the Examiner should check with the Columbia Police Department (CPD). The Examiner did not locate a listing for the CPD in Lexington County but did locate a listing for the West Columbia Police Department (WCPD). The Examiner contacted the WCPD and was advised there was no record

---

[1] NICS E-Check is an electronic service, accessed via the Internet, for the NICS Section to directly accept firearms background checks from FFLs. The system automatically conducts the same review as NICS Call Center CSSRs and responds accordingly.

SUBJECT TO PROTECTIVE ORDER

FBI-00000152

of an arrest of Roof. Court records revealed no convictions. Contacted agencies provided either no definitive clarifying information or did not respond. While the Roof inquiry remained in Delayed status, the Examiner processed other inquiries.

(U//FOUO) On Thursday, 04/16/2015, the fourth business day from the initial inquiry request, the Brady Transaction Date, the gun dealer exercised his lawful discretion and transferred the gun to Roof. On 06/17/2015, Roof shot and killed nine people attending church services in Charleston, South Carolina.

## Summary Findings

(U//FOUO) The Roof transaction represented one of many paths an FFL inquiry could follow through the complex NICS process. The INSD review identified both areas of exemplary performance and improvement opportunities. Recommendations and identified mitigation opportunities are detailed herein.

### (U//FOUO) Positive Outcomes

- The Examiner on the Roof Matter performed as required and in accordance with current policy and procedures.
- NICS Section EM worked proactively to predict and resolve resource and workflow challenges with available in-house resources.
- NICS worked collaboratively as a section and in an "all hands on deck" manner to meet a background check demand which doubled over the past ten years.
- NICS recognized the importance of strong SOPs and devised standardized training for all new Examiners.
- NICS staff articulated dedication and pride in the mission, in spite of heavy workloads and challenges with the receipt of timely information from law enforcement agencies.

### (U//FOUO) Issues

- The lack of timely responses and/or incomplete records were primarily responsible for delayed inquiries. Record holders are not required to respond to NICS inquiries.
- Examiners were forced to rely on outdated and inefficient means of communication with various state and local agencies which inhibited effective resolution.
- While demand doubled over the last 10 years, resources remained essentially the same within the NICS Section. Consequently, proactive outreach efforts with agencies and FFLs suffered as resources were pulled to address the increasing number of NICS inquiries.
- To meet statutory requirements, CJIS management amended SOPs and curtailed resolution efforts to focus on initial reviews within the Brady Transaction Period.

SUBJECT TO PROTECTIVE ORDER

FBI-00000153

UNCLASSIFIED//FOR OFFICIAL USE ONLY

- The NICS SOP prioritized volume over resolution allowing Delayed work to be reviewed on Day 3 which met the statutory requirement, but resulted in inquiries exceeding the Brady Transaction Date.
- NICS was not required, and therefore did not ensure requests for information to outside agencies were received or reviewed by the recipient agency.
- NICS was not required to proactively review current or new information resources to increase overall effectiveness in conducting firearm background checks. Limited resources and SOPs limited the ability of Examiners to pursue additional datasets. For instance, a query of NDEX, which was reviewed and subsequently not included as a NICS dataset, would have revealed the prohibiting Roof incident report.
- Quality assurance processes were burdensome and reduced manpower available for inquiry resolution. During surge periods, quality assurance was limited to full-time Examiners and the surged workforce was not reviewed.
- Emphasis on inquiry quotas, linking performance to the number of processed inquiries, and regularly redirecting employees from other units to work the high volume of incoming inquiries shifted focus away from resolution ▮ (M)
- NICS examinations are complicated by statutory requirements, including short data purge windows, and increased Examiner requirements to complete reviews in order to verify prohibitors.
- NICS demonstrated the ability to predict surge requirements, however employee schedules were maintained which did not maximize effectiveness.

**SUBJECT TO PROTECTIVE ORDER**

**FBI-00000154**

UNCLASSIFIED//FOR OFFICIAL USE ONLY

## II. SCOPE AND METHODOLOGY

(U//FOUO) On 07/20/2015, a six-member INSD team including, an Inspector-in-Charge, two Inspection Team Leaders, two Assistant Inspectors-in-Place, and a Support Operations Specialist, deployed to the FBI CJIS facility in Clarksburg, West Viginia, to conduct the review. The team conducted interviews with management and Legal Instrument Examiner Teams in the NICS Section. INSD's review focused on three areas: (1) the availability, sharing, and timeliness of actionable intelligence; (2) coordination among CJIS units and law enforcement; and (3) CJIS Division's oversight and program management preceeding the 06/17/2015 shooting incident at the Emanuael AME Church in Charleston, South Carolina.

(U//FOUO) INSD conducted a total of 21 interviews. All of the interviews involved personnel assigned to the NICS Section as denoted below:

| FBI | Number Interviewed |
|---|---|
| AD | 1 |
| SECTION CHIEF | 1 |
| UNIT CHIEF | 3 |
| ACTING UNIT CHIEF | 2 |
| SUPERVISOR EXAMINER UNIT | 2 |
| SUPERVISOR LEGAL ANALYSIS TEAM | 1 |
| SUPERVISOR PROGRAM ANALYSIS | 1 |
| SUPERVISOR BUSINESS RELATIONS | 1 |
| REGIONAL COORDINATOR | 2 |
| TRAINING | 2 |
| LEGAL INSTRUMENT EXAMINER | 4 |
| MAPA | 1 |
| **Total Interviewed** | **21** |

Table 1

(U//FOUO) INSD reviewed NICS Section communications consisting of faxes, reports, Standard Operating Procedures, NICS internal documents, and a NICS SharePoint site. INSD did not review or interview personnel from external agencies.

(U//FOUO) **Overview of NICS:** NICS is a DOJ program designed to keep firearms from criminals, the mentally ill, illegal aliens, and people who have renounced their U.S. Citizenship or violate a number of State specific prohibitors. NICS is utilized to determine qualification for receiving or possessing firearms according to federal guidelines. The NICS process includes searching, at a minimum, three federally maintained databases: the National Crime Information Center (NCIC), the Interstate Identification Index (III), and the NICS Index. If applicant identifiers match any entries in the federally maintained databases, the External Manual and Automated Databases are cross-referenced for resolution. These databases include

UNCLASSIFIED//FOR OFFICIAL USE ONLY
6

SUBJECT TO PROTECTIVE ORDER

FBI-00000155

UNCLASSIFIED//FOR OFFICIAL USE ONLY

the ATF Relief from Disabilities Database (ATFRDD), the NICS Voluntary Appeal File (VAF), the Disposition and Document File (DDF), and Westlaw (also includes West Docket).

(U//FOUO) **NICS Section Structure:** ▓▓▓ (H) ▓▓▓ full-time Examiners range in grade from GS-6 to GS-9. Examiners are assigned to the NICS Section, within the CJIS Division at Clarksburg, West Virginia. The Examiners are divided into various NICS program roles, to include, the Research and Analysis Team; Appeal Services and Explosives; Command Center; Regional Coordinators; and NICS Index Team.



(U//FOUO) Additionally, the NICS Section manages three regional contract Call Centers in Dallas-Fort Worth, Texas; Wheeling, West Virginia; and Barbourville, Kentucky. These call centers employ approximately (H) Customer Service Representatives (CSSR) who triage initial telephone NICS inquiries. An organizational chart is referenced in the Roof Case Binder (Appendix K, Section 2).

(U//FOUO) **NICS Process:** The NICS process can follow several paths from inquiry to resolution. To initiate a firearms background check, an applicant must show the FFL an approved form of photo identification and provide name, sex, race, date of birth, and the state of residence as required on ATF Form 4473. A NICS Transaction Number (NTN) is provided to the FFL and must be recorded on ATF Form 4473. NICS requested applicants submit additional descriptors and unique identifiers to assist in discerning between similar records, because NICS utilized a descriptive based search. The NICS response to an inquiry consists of a notice to the FFL stating

UNCLASSIFIED//FOR OFFICIAL USE ONLY
7

**SUBJECT TO PROTECTIVE ORDER**

**FBI-00000156**

UNCLASSIFIED//FOR OFFICIAL USE ONLY

the transfer of the firearm may Proceed, is Denied, or is Delayed pending further review. FFLs are permitted to legally transfer weapons when the NICS response is Proceed or if exceeding three business days from a Delayed inquiry. The criterion for denying a transfer is based on ten federal prohibitors, as well as, additional state specific prohibitors. The ten federal prohibitors as defined in the Gun Control Act of 1968; Title 18, United States Code (U.S.C.), Sections 921 and 922; Title 27, Code of Federal Regulations (C.F.R.) Part 478.11, are briefly outlined below and incorporated in Appendix A:

- SECTION 922(g)(1) - PERSONS WHO HAVE BEEN CONVICTED IN ANY COURT OF A CRIME PUNISHABLE BY IMPRISONMENT FOR TERM EXCEEDING ONE YEAR
- SECTION 922(g)(2) - PERSONS WHO ARE FUGITIVES FROM JUSTICE
- SECTION 922(g)(3) - PERSONS WHO ARE UNLAWFUL USERS OF OR ADDICTED TO ANY CONTROLLED SUBSTANCE
- SECTION 922(g)(4) - PERSONS WHO HAVE BEEN ADJUDICATED AS MENTAL DEFECTIVES OR HAVE BEEN COMMITTED TO A MENTAL INSTITUTION
- SECTION 922(g)(5) - PERSONS WHO ARE ALIENS AND ARE ILLEGALLY OR UNLAWFULLY IN THE UNITED STATES
- SECTION 922(g)(6) - PERSONS WHO HAVE BEEN DISCHARGED FROM THE U.S. ARMED FORCES UNDER DISHONORABLE CONDITIONS
- SECTION 922(g)(7) - PERSONS WHO, HAVING BEEN CITIZENS OF THE UNITED STATES, HAVE RENOUNCED THEIR U.S. CITIZENSHIP
- SECTION 922(g)(8) - PERSONS SUBJECT TO A COURT ORDER THAT RESTRAINS THEM FROM HARASSING, STALKING, OR THREATENING AN INTIMATE PARTNER OR CHILD OF SUCH INTIMATE PARTNER, OR FROM ENGAGING IN OTHER CONDUCT THAT WOULD PLACE THE PARTNER OR CHILD IN REASONABLE FEAR OF BODILY INJURY
- SECTION 922(g)(9) - PERSONS CONVICTED IN ANY COURT OF A MISDEMEANOR CRIME OF DOMESTIC VIOLENCE
- SECTION 922(n) - PERSONS WHO ARE UNDER INDICTMENT OR INFORMATION FOR A CRIME PUNISHABLE BY IMPRISONMENT FOR A TERM EXCEEDING ONE YEAR.

(U//FOUO) While the majority (91%) of NICS inquiries are resolved within minutes, the absence of complete records and/or unavailable clarifying information requires additional processing to allow for determination of eligibility. Delayed transactions are placed in the "Delayed Queue." In such cases, the Brady Handgun Violence Prevention Act allows the NICS Examiners up to three business days to obtain the missing/clarifying information by contacting local, state, and federal law enforcement agencies. If the information cannot be obtained prior to the expiration of the allotted three business days, also referred to as the Brady Period, and NICS is unable to provide either a Proceed or Deny response, the FFL has the option to legally transfer the firearm. The date on which the transfer may legally occur is called the "Brady Transaction Date."

(U//FOUO) If the NICS Legal Instruments Examiner, hereafter referred to as Examiner, discovers a NICS firearm transaction is Denied after the Brady Transaction Date, the Examiner must verify if the firearm was transferred by the FFL. The Examiner must also obtain the day of

SUBJECT TO PROTECTIVE ORDER

FBI-00000157

UNCLASSIFIED//FOR OFFICIAL USE ONLY

transfer and select the correct Firearm Retrieval/Referral Ranking Code. The Examiner refers the information obtained from the FFL along with the appropriate Firearm Retrieval/Referral Ranking Code to initiate ATF retrieval of the firearm from the purchaser.

The following is a list of the codes and their descriptions:

| Code | Description |
|---|---|
| 01 | Violent Felony (Rape, Murder, Burglary, Armed Robbery, Arson and Kidnapping) (The list of violent felony charges provided is all inclusive.) |
| 02 | Non-Violent Felony (All other felonies) |
| 03 | Misdemeanor Crime of Domestic Violence |
| 04 | Protection Order |
| 05 | Under Indictment |
| 06 | Fugitive from Justice |
| 07 | Drug User |
| 08 | Mental Defective |
| 09 | Illegal Alien |
| 10 | Renounced Citizenship |
| 11 | Dishonorable Discharge |
| 12 | Active Probation Prohibiting Firearm Possessions |
| 13 | Misdemeanor Punishable by 2+ Years |
| 14 | Identification for Firearms Sales |
| 15 | State Prohibitor (Unless Active Probation Prohibiting Firearm Possessions refer to Firearm Retrieval/Referral code 12). |

(H), (N)

[redacted]

**(U//FOUO) NICS Section Business Process:** NICS operates from 8 am EST to 1 am EST, seven days a week, every day with the exception of Christmas. A NICS inquiry is processed by either CJIS/NICS or a designated state point of contact, which involves state employees querying NICS and conducting the necessary follow up. Thirty-six states opted for the FBI to provide the firearms background check function. For the inquiries processed by NICS, the FFL can contact NICS via telephone (Call Centers) or submit requests through the

UNCLASSIFIED//FOR OFFICIAL USE ONLY

NICS E-Check[2] automated service. At the NICS Section, Examiners typically select inquiries from the "Pending Queue" and work the inquiry through resolution or until all logical leads are awaiting external response. During some periods (typically weekends or evenings), Examiners triage incoming matters to determine if the inquiry can be either Proceeded or Denied. If the inquiry is Delayed, the inquiry is placed in the appropriate region queue for in-depth research regarding laws or prohibitions specific to a state or region. This was the case in the Roof matter. The NICS process is depicted on page 11, Figure 1, and incorporated in Appendix B.

(U//FOUO) The below chart explains the status of an inquiry as it proceeds through the process.

| Inquiry Status | Day Number | Status Explanation |
|---|---|---|
| Delayed | 1 - 3 | Unable to resolve within Brady Transaction Date |
| Open | 4 - 30 | Remains in Examiner's personal history for action |
| Expired | 31 - 88 | Drops off Examiner's history and is available for action by any Examiner. |

Table 2

(U//FOUO) Examiners pull inquiries out of the Pending Queue or their respective Regional Queue and process accordingly. Transactions exceeding the Brady Transaction Date (third business day) remain in an Open status in the Examiner's history for the remainder of the initial 30 days. Open status allows any examiner to access the inquiry if new information becomes available. After 30 days, the inquiry is removed from the Examiner's history and placed in Expired status, also accessible to all Examiners. At Day 88, the records are purged from the system per statute.

(U//FOUO) In 2014, NICS received approximately 8,256,688 firearms background inquiries, an average of 22,683 inquiries each day. The NICS Call Centers resolved 5,531,981 of the transactions, with the remainder forwarded to the NICS Section at CJIS. A total of 228,006 of the requests forwarded to the NICS Section were Delayed and went past the three business day Brady requirement. Of those, 172,879 were purged without resolution after 88 days. The NICS Process is depicted below. The 2014 Unresolved NICS Transaction break-down is referenced in Appendix H.

---

[2] NICS E-Check is an electronic service, accessed via the Internet, for the NICS Section to directly accept firearms background checks from FFLs. The system automatically conducts the same review as NICS Call Center CSSRs and responds accordingly.

**SUBJECT TO PROTECTIVE ORDER**

**FBI-00000159**

UNCLASSIFIED//FOR OFFICIAL USE ONLY



Figure 1

### III.   THE ROOF CASE

(U//FOUO)  On Saturday, 04/11/2015, Roof went to Shooter's Choice, a gun store located at 944 Sunset Boulevard, West Columbia, South Carolina to purchase a .45 caliber Glock handgun. Roof filled out ATF Form 4473 for the FFL. Question 11e on the form was: "Are you an unlawful user of, or addicted to marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?" Roof checked "No" on the form. If Roof responded affirmatively, the FFL would have terminated the sale and would not have contacted NICS. At 3:58 pm, the FFL contacted NICS as required by law and the telephone call was routed to the Dallas-Fort Worth, Texas Call Center. The CSSR entered information from Roof's ATF Form 4473 into the NICS automated system, which reviewed the three federally maintained databases. A potentially matching identifier was located and at 3:58 pm, the CSSR transferred the FFL to the NICS Section in Clarksburg, West Virginia for additional processing. The telephone call was received by the Examiner in Clarksburg at 4:01 pm.

UNCLASSIFIED//FOR OFFICIAL USE ONLY
11

SUBJECT TO PROTECTIVE ORDER

FBI-00000160