**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| ) | Civil Action No.: 2:16-cv-2356-RMG |
| Felicia Sanders, individually and as Legal ) | |
| Custodian for K.M., a minor, ) | |
| ) | |
| Plaintiff, ) | **AMENDED COMPLAINT** |
| ) | |
| vs. ) | |
| ) | |
| The United States of America, ) | |
| ) | |
| Defendant. ) | |

Felicia Sanders (hereinafter by name or "Plaintiff"), as Legal Custodian for K.M. (a minor), complaining of the Defendant alleges as follows:

1. K.M is a child and the niece of Tywanza Sanders and the great-niece of Susie Jackson. Plaintiff brings all actions for K.M. as her Legal Custodian. Both Plaintiff and K.M. were citizens and residents of Charleston, South Carolina, at the time of the events complained of herein.

2. The United States of America is the Defendant in this action.

3. Venue is proper in this Court in that all, or a substantial part, of the acts and/or omissions forming the basis of these claims occurred in the District of South Carolina, Charleston Division.

4. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1346(b)(1).

5. Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act by giving formal written notice to the USA through the filing of a Form 95

with the United States Attorney General and the FBI. The Department of Justice notified

Plaintiff in February 2016 that the claim was denied.

6. All actions or inactions in this case were perpetrated or promulgated by employees and/or

agents of the United States of America (through one of its political subdivisions or

agencies, namely, in this case, the Federal Bureau of Investigation).

7. The United States, if a private person herein, "would be liable to the claimant in

accordance with the law of the place where the act or omission occurred." 28 U.S.C. §

1346(b)(1).

**BACKGROUND**

8. On February 28, 2015, a city of Columbia Police Department Officer arrested Dylann

Roof at Columbiana Mall for possession of Suboxone, a controlled substance, without a

prescription, after Roof admitted that he did not have a prescription for the controlled

substance found in his pocket.

9. The City of Columbia Police Department Incident Report dated 2/28/2015 was created by

the City of Columbia Police Officers, was available from the Columbia SC Police

Department prior to April 11, 2015, and stated in pertinent part as follows:

> "… I located a small unlabeled white bottle containing multiple orange in
> color square strips located in Mr. Dylann's right jacket pocket. I then
> asked Mr. Dylann what the orange strips were and he stated they were
> Listerine strips. I again asked him what they were and he stated they were
> Suboxone. I then asked Mr. Dylann if he had a prescription for them and
> he stated that he did not. I then confirmed through Poison Control that
> Suboxone is a Schedule III narcotic." (Exhibit 1 attached includes full
> narrative).

10. Prior to April 11, 2015 an arrest warrant charging Dylann Storm Roof with the offense of

possession of Schedule III Drugs/Possession of other controlled sub. Sched. I-V -First

Offense based in pertinent part on the following facts:

2

> "… affiant received consent to search his person and located (1) white unlabeled pill bottle containing multiple orange in color strips believed to be Suboxone.  Post Miranda the defendant stated he was given the substance by a friend and that he did not have a prescription.  Affiant confirmed the substance as Schedule III through Poison Control." (Exhibit 2 attached includes full warrant)

was a public record on file and available at the office of the Clerk of Court for Lexington County, South Carolina.

11. Prior to April 11, 2015, the narrative of the Incident Report set forth on Exhibit 1 was available from the South Carolina Law Enforcement Division (SLED).

12. Prior to April 11, 2015, the narrative of the Incident Report set forth on Exhibit 1 was furnished by SLED to the N-DEx system, a database developed and managed by the Federal Bureau of Investigation's (FBI's) Criminal Justice Information Services (CJIS) Division.

13. Prior to April 11, 2015, the narrative of the Incident Report set forth on Exhibit 1 was available in the N-DEx system.

14. The N-DEx system is the database managed by the FBI's CJIS Division, containing information provided by Federal and state agencies about persons prohibited under Federal law from receiving or possessing a firearm.

15. On April 11, 2015, approximately six weeks after his arrest on February 28, 2015, Dylann Roof attempted to purchase a semi-automatic Glock pistol at Shooter's Choice, a federal firearms licensee (FFL), a firearm dealer located in West Columbia, South Carolina.

16. National Instant Criminal Background Check (NICS) is a subunit of the FBI's CJIS Division, which an FFL must contact for information on whether receipt of a firearm by a person would violate Federal or state law.

17. South Carolina is one of thirty-six states and territories that have opted to rely on the Defendant's NICS for all firearm sales background checks. Accordingly, firearms dealers in South Carolina are **required** to rely upon Defendant to actually perform the background checks through NICS to determine if receipt of a firearm by a potential purchaser would violate Federal or state law.

18. NICS Operation Center is that unit of the FBI that receives telephone or electronic inquiries from FFLs to perform background checks, research criminal history and make a determination based upon available information as to whether the receipt or transfer of a firearm would be in violation of Federal or state law.

19. The FBI NICS Operation Center, upon receiving a FFL telephone or electronic dial up request for a background check, is mandated to search relevant databases for any matching records and provide the FFL a "Denied" response when at least one matching record is found that provides information demonstrating that receipt of a firearm by a prospective transferee would violate 18 U.S.C. § 922 or state law.

20. On April 11, 2015, Shooter's Choice contacted the FBI NICS Operation Center for a background check when Roof applied to purchase a semi-automatic Glock pistol at Shooter's Choice.

21. Federal statutory law and/or Federal regulations and/or Federal policy, including Standard Operating Procedures (SOPs), specifically prescribes and mandates a course of action for defendant to follow upon receiving a request for a background check from the FFL.

22. The Brady Act, 18 U.S.C.A. § 922(d)(3), provides:

(d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—

\*              \*              \*

(3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));

18 U.S.C.A. § 922

23. The Brady Act, 18 U.S.C.A. § 922(g)(3), provides:

(g) It shall be unlawful for any person—

\*              \*              \*

(3) who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));

\*              \*              \*

to possess…any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C.A. § 922

24. Defendant received Shooter's Choice request for a background check on Roof on April 11, 2015 and noted Roof was listed as having been arrested on a felony drug charge.

25. Because potential prohibitors to the sale of a firearm to Roof existed the Legal Instrument Examiner who received the request transferred the matter to a second Legal Instrument Examiner.  The second examiner received the transfer on April 13, 2015.

26. On April 13, 2015 the second examiner contacted the Lexington County Sheriff's Office to obtain the Incident Report to find out if Roof was qualified to receive a firearm.

27. According to FBI Director James Comey, on April 13, 2015, and a fax transmission from the Lexington County Sheriff's Office (Exhibit 3 attached) the Lexington County Sheriff's Department responded to the second NICS examiner telling her the case was not theirs, and that "Columbia PD will have the report."

28. The second examiner never did contact the Columbia Police Department.

29. After receiving the response set forth in paragraph 27 above, on April 13, 2015, the second examiner decided to contact the City of West Columbia Police Department to request the Incident Report to find out if Roof was qualified to receive the firearm. West Columbia Police Department responded to her that they had no record of Roof's arrest.

30. After receiving the report from the City of West Columbia Police Department the FBI NICS took no further steps to learn about Roof's reported felonious drug arrest until after the shooting hereinafter set forth, and it took no action to prevent Roof from being allowed to purchase a semi-automatic Glock pistol in April 2015. Consequently, on April 16, 2015, Roof was permitted to purchase a semi-automatic Glock pistol.

31. On June 17, 2015, Roof walked into Emanuel AME Church in Charleston, South Carolina ("Mother Emanuel") and shot and murdered nine people, including Tywanza Sanders, Plaintiff K.M.'s uncle, and Susie Jackson, Plaintiff K.M's great-aunt, while Plaintiff Felicia Sanders and Plaintiff K.M. were attending bible study at Mother Emanuel.

32. Roof used the semi-automatic Glock pistol he illegally purchased from Shooter's Choice in the massacre at Mother Emanuel.

33. After the attack the FBI NICS researched Roof's eligibility to purchase a semi-automatic Glock pistol and, on June 29, 2015, the NICS unit, based on the information contained in the Columbia Police Incident Report, did, in fact, issue a Decision to DENY the sale based on Federal Prohibitor 922(g)(3) (Exhibit 4).

34. Defendant, in a statement by FBI Director James Comey, has admitted that it initially (in April 2015) should have denied the sale of a firearm by Shooter's Choice to Roof because such sale was in violation of the Brady Act. (Exhibit 5)

35. Based upon information contained in both-the available February 28, 2015 Incident Report (Exhibit 1) and available in the arrest warrant (Exhibit 2), namely that Roof was an unlawful user of or addicted to a controlled substance, Defendant was required to deny the sale of a firearm by Shooter's Choice to Roof because such sale was in violation of 18 U. S. C. § 922(d)(3), and 18 U. S. C. § 922(g)(3).

## CAUSES OF ACTION

### COUNT I
### (NEGLIGENCE, CARELESSNESS,
### GROSS NEGLIGENCE AND RECKLESSNESS)

### A. FAILURE TO FOLLOW FBI NICS POLICY

### 1. FAILURE TO CONTACT ARRESTING AGENCY – COLUMBIA POLICE DEPARTMENT TO OBTAIN INCIDENT REPORT

36. Each and every allegation set forth above is repeated and reiterated as if set forth verbatim herein.

37. Federal statutory law and/or Federal regulations and/or Federal policy, including S.O.P. 5.5.5 (Exhibit 6), mandated that the second examiner was required to contact Columbia Police Department, the arresting agency, to obtain the Incident Report and/or Arrest Warrant and/or make a determination to make a determination based upon available information as to whether the receipt or transfer of a firearm would be in violation of Federal or state law.

38. An FBI NICS South Carolina City/County List contained data available to the second examiner during the performance of the Roof background check by the FBI NICS Operation Center in April, 2015 (Exhibit 7 attached)

39. The South Carolina City/County List as of April 11, 2015, reflected that the City of Columbia was located in Richland County.

40. As of April 11, 2015, an FBI NICS contact list for Richland County was available to the second examiner showing contact information sufficient to have allowed her to contact the Columbia Police Department.  (Exhibit 8 attached).

41. During the Roof Transaction the second Examiner did not search the South Carolina City/County List or the Richland County Contact List.

42. During the NICS transaction in April, 2015, referred to above, Defendant undertook the duty to perform the Roof semi-automatic Glock pistol background check but was negligent, careless, grossly negligent and reckless in failing to search the available City/County List and the available Contact List for Richland County in order to enable the second examiner to contact the Columbia Police Department to obtain the Incident Report from the Columbia Police Department (Exhibit 1), and/or in otherwise failing to conduct the background check in a reasonable manner.

43. During the NICS transaction in April, 2015, referred to above, the Incident Report from the Columbia Police Department (Exhibit 1) was available from the Columbia Police Department as of April 11, 2015.

44. If Defendant had complied with the mandatory and non- discretionary Federal statutory law and/or Federal regulations and/or Federal policy which mandated the second examiner to perform a proper search so as to enable the second examiner to contact the Columbia Police Department, the arresting agency, and the agency that the second examiner had been expressly told had the incident report, the FBI NICS Operation Center would have obtained the Columbia Police Department Incident Report.

45. If the NICS Operation Center had obtained the Columbia Police Department Incident Report, Roof would not have been permitted to purchase the semi-automatic Glock pistol

he purchased on April 16, 2015, used to murder nine parishioners and to attempt to

murder others on the attack on Mother Emanuel AME Church in Charleston, South

Carolina.

## 2.   FAILURE TO CONTACT SLED TO OBTAIN NARRATIVE REPORT

46. Federal statutory law and/or Federal regulations and/or Federal policy, including S.O.P.

5.5.5 (Exhibit 6), mandated that the second examiner was required to contact the state

POC (SLED) to obtain the Incident Report and/or Arrest Warrant and/or make a

determination to make a determination based upon available information as to whether

the receipt or transfer of a firearm would be in violation of Federal or state law.

47. An FBI NICS South Carolina processing page contained data available to the second

examiner during the performance of the Roof background check by the FBI NICS

Operation Center in April, 2015.

48. The South Carolina processing page reflected a fax and/or phone number which could be

used to contact the state POC (South Carolina Law Enforcement Division) as of April 11,

2015.

49. During the NICS transaction in April, 2015, referred to above, the second examiner was

negligent, careless, grossly negligent and reckless in failing to contact the POC (SLED)

to obtain the narrative of the Incident Report of the Columbia Police Department (Exhibit

1), and/or to obtain clarification as to the Columbia Police Department Contact

information.

50. During the NICS transaction in April, 2015, referred to above, the narrative of the

Incident Report from the Columbia Police Department was available from SLED as of

April 11, 2015, and SLED was in possession of contact information as to the Columbia Police Department.

51. If Defendant had complied with the mandatory and non-discretionary Federal statutory law and/or Federal regulations and/or Federal policy which mandated the second examiner to contact the state POC (SLED), the FBI NICS Operations Center would have obtained the narrative of the Incident Report from SLED and/or the Columbia Police Department.

52. If the FBI NICS Operation Center had obtained the narrative of the Incident Report of the Columbia Police Department, Roof would not have been permitted to purchase the semi-automatic Glock pistol purchased on April 16, 2015, used to murder nine parishioners and to attempt to murder others in the attack on Mother Emanuel Church in Charleston, South Carolina.

### 3. FAILURE TO CONTACT LEXINGTON COUNTY COURT TO OBTAIN ARREST WARRANT

53. Federal statutory law and/or Federal regulations and/or Federal policy, including S.O.P. 5.5.5 (Exhibit 6), mandated that the second examiner was required to contact the Lexington County Court to obtain the Incident Report and/or Arrest Warrant to make a determination based upon available information as to whether the receipt or transfer of a firearm would be in violation of Federal or state law.

54. An FBI NICS South Carolina Contact List for Lexington County contained data available to the second examiner during the performance of the Roof background check by the FBI NICS Operation Center in April, 2015

55. The South Carolina Contact List for Lexington County reflected a fax and/or phone number which could be used to contact the Lexington County Court or Clerk of Court.

56. During the NICS transaction in April, 2015, referred to above, the second examiner was negligent, careless, grossly negligent and reckless in failing to contact the Lexington County Court or Clerk of Court to obtain the arrest warrant attached hereto as Exhibit 2.

57. During the NICS transaction in April, 2015, referred to above, the arrest warrant attached hereto as Exhibit 2 was available from the Office of the Clerk of Court for Lexington County as of April 11, 2015.

58. If the Defendant had complied with the mandatory and non-discretionary Federal statutory law and/or Federal regulations and/or Federal policy which mandated the second examiner contact the Lexington County Court, the FBI NICS Operation Center would have obtained the arrest warrant (Exhibit 2) for the arrest of Dylann Roof.

59. If the FBI NICS Operation Center had obtained the arrest warrant for the arrest of Dylann Roof, Roof would not have been permitted to purchase the semi-automatic Glock pistol he purchased on April 16, 2015, used to murder nine parishioners and to attempt to murder others in the attack on Mother Emanuel AME Church in Charleston, South Carolina.

60. If the FBI NICS Operation Center would have obtained the arrest warrant for the arrest of Dylann Roof, the FBI NICS Operation Center would have been made aware of contact information as to the Columbia, South Carolina Police Department, such information being sufficient for the FBI NICS Operation Center to have contacted the Columbia, South Carolina Police Department to obtain the Columbia Police Department Incident Report.

## COUNT II
## (NEGLIGENCE, CARELESSNESS, GROSS NEGLIGENCE AND RECKLESSNESS)

## A. FAILURE TO FOLLOW FEDERAL REGULATION MANDATING SEARCH OF NICS INDEX

61. Each and every allegation set forth above is repeated and reiterated as if set forth verbatim herein.

62. Federal statutory law and/or Federal regulations and/or Federal policy mandated the second examiner was required to search the relevant databases (i.e., NICS Index, NCIC, III) for any matching records and deny the transaction when at least one matching record is found in either the NICS Index, NCIC or III that provides information demonstrating that receipt of a firearm by the perspective transferee would violate 18 U.S.C. § 922 or state law.

63. Federal statutory law and/or Federal regulations and/or Federal policy mandated that a search was required to be performed by NICS of the database managed by the FBI, containing information provided by Federal and state agencies about persons prohibited under Federal law from receiving or possessing a firearm.

64. The database referred to in the preceding paragraph is separate and apart from the NCIC and Interstate Identification Index (III).

65. During the NICS transaction in April, 2015, referred to above, the second examiner was negligent, careless, grossly negligent and reckless in failing to search the database, managed by the FBI's CJIS Division, containing information provided by Federal and state agencies, including the narrative of the Incident Report provided by SLED referred to above, which contained information about Dylann Roof, showing Dylann Roof was prohibited under Federal law from receiving or possessing a firearm.

66. During the NICS transaction in April, 2015, referred to above, information was available in the database, managed by the FBI's CJIS Division, located in the same building as the

second examiner, which contained information provided by SLED about Dylann Roof, showing Dylann Roof was prohibited under Federal law from receiving or possessing a firearm, which information was available as of April 11, 2015.

67. If the Defendant had complied with the mandatory and non-discretionary Federal statutory law and/or Federal regulations and/or Federal policy which mandated the second examiner to search the database, managed by the FBI, containing information provided by Federal and state agencies about persons prohibited under Federal or state law from receiving or possessing a firearm, the FBI NICS Operation Center second examiner would have received information provided by SLED about Dylann Roof showing Dylann Roof was prohibited under Federal law from receiving or possessing a firearm.

68. If the FBI NICS Operation Center second examiner had obtained information provided by SLED about Dylann Roof showing Dylann Roof was prohibited under law from receiving or possessing a firearm, Roof would not have been permitted to purchase the semi-automatic Glock pistol he purchased on April 16, 2015 used to murder nine parishioners and to attempt to murder others in the attack on Mother Emanuel AME Church in Charleston, South Carolina.

## COUNT III
## (NEGLIENCE, CARELESSNESS,
## GROSS NEGLIGENCE AND RECKLESSNESS)

### A.  FAILURE TO FOLLOW FEDERAL REGULATION MANDATING MAINTAINING DATA INTEGRITY

69. Each and every allegation set forth above is repeated and reiterated as if set forth verbatim herein.

70. Federal statutory law and/or Federal regulations and/or Federal policy mandated the FBI to maintain data integrity during all NICS operations that were managed and carried out by the FBI.

71. One of the operations carried out by the FBI is the operation carried out by the NICS Operation Center that receives inquiries from FFLs and performs background checks to determine whether the receipt or transfer of a firearm would be in violation of Federal or state law.

72. The Columbia Police had arrested Dylann Roof on February 28, 2015 on the drug charge in a part of the City of Columbia that lies within Lexington County.

73. The FBI NICS South Carolina Contact List for Lexington County contained data used during the performance of the Roof background check by the FBI NICS Operation Center in April 2015.

74. In April, 2015 the South Carolina Contact List for Lexington County contained data maintained during the NICS operation referred to herein that was managed and carried out by the FBI.

75. Despite the fact that a part of the city of Columbia is and has since 1990 been located in Lexington County the FBI contact list for Lexington County did not include Columbia and/or Columbia Police Department as of April 11, 2015.

76. Defendant was negligent, careless, grossly negligent and reckless in failing to maintain its data integrity so as to include Columbia and/or Columbia Police Department in the Lexington County Contact List as of April 11, 2015.

77. If Defendant had complied with the mandatory and non-discretionary Federal statutory law and/or Federal regulations and/or Federal policy which mandated the FBI to maintain

data integrity during all NICS operations that were managed and carried out by the FBI, the FBI NICS Contact List for Lexington County would have included Columbia and/or Columbia Police Department as of April 11, 2015.

78. If the FBI Contact List for Lexington County had included Columbia and/or Columbia Police as of April 11, 2015 the FBI NICS Operation Center would have obtained the Columbia Police Department Incident Report.

79. If the FBI NICS Operation Center had obtained the Columbia Police Department Incident Report, Roof would not have been permitted to purchase the semi-automatic Glock pistol he purchased on April 16, 2015 used to murder nine parishioners and to attempt to murder others in the attack on Mother Emanuel AME Church in Charleston, South Carolina.

<u>COUNT IV</u>
<u>(NEGLIGENCE, CARELESSNESS,</u>
<u>GROSS NEGLIGENT AND RECKLESSNESS)</u>

**A. NEGLIGENCE INDIVIDUALLY AND IN COMBINATION RESULTING IN FAILURE TO DENY ROOF APPLICATION TO PURCHASE FIREARM**

80. Each and every allegation set forth above is repeated and reiterated as if set forth verbatim herein.

81. Federal statutory law and/or Federal regulations and/or Federal policy mandated the FBI NICS Operation Center, upon receiving and FFL telephone or electronic dial up request for a background check, to research criminal history and make a determination based upon available information and to make every effort to obtain the necessary information to make a determination.

82. Federal law prohibits the sale of a firearm to a person who is an unlawful user of any controlled substance.

83. Defendant was negligent, careless, grossly negligent and reckless in the failures set forth above including but not limited to failing to properly search criminal history and make a determination based upon available information and/or failure to contact state POC (SLED), or the Columbia Police Department or the Lexington County Court or to search NICS Index to obtain available information or to research and/or review the South Carolina City/County List and/or South Carolina Contact List for Richland County, or to maintain data integrity as to Lexington County Contact List each of which negligence, carelessness, gross negligence and recklessness resulted in the failure to deny the sale of the semi-automatic Glock pistol to Roof, and creation of risk of death and injury to Plaintiff.

84. If the Defendant had complied with the mandatory and non-discretionary Federal statutory law and/or Federal regulations and/or Federal policy which mandated the FBI NICS Operation Center, upon receiving an FFL telephone or electronic dial up request for a background check, to research criminal history and make a determination based upon available information and to make every effort as set forth above to obtain the necessary information, the second examiner would have contacted the state POC (SLED), or the Columbia Police Department, which she was told had the incident report, or the Lexington County Court, or SLED or searched the NICS Index or would have searched the South Carolina City/County List to determine that the City of Columbia was located in Richland County and used the Contact List for Richland County to obtain sufficient information to contact the Columbia Police Department to obtain the Columbia Police Incident Report (Exhibit 1) and/or the Arrest Warrant (Exhibit 2).

85. If the NICS Operation Center had obtained the Columbia Police Department Incident Report Roof would not have been permitted to purchase the semi-automatic Glock pistol he purchased on April 16, 2015 used to murder nine parishioners and attempt to murder others in the attack on Mother Emanuel AME Church in Charleston, South Carolina.

86. The Defendant was negligent in failing to deny the sale of the firearm to Roof.

## **DAMAGES**

87. As a direct, proximate, and foreseeable result of the negligent, careless, grossly negligent, and reckless acts of Defendant set out above, Tywanza Sanders and Susie Jackson are dead, and Plaintiff K.M. witnessed the shooting of Tywanza Sanders and Susie Jackson and has suffered severe and permanent injury.

88. As a result of the emotional distress caused by witnessing the murder of Tywanza Sanders and Susie Jackson, Plaintiff K.M. suffered physical symptoms capable of objective diagnosis.

89. Plaintiff K.M. has also suffered severe and permanent injury as a result of Defendant's (and/or its divisions, agents, and/or employees) negligent infliction of emotional distress for which, Plaintiff Felicia Sanders, on behalf of Plaintiff K.M., is entitled to recover an amount of actual, special, and consequential damages to be determined by the trial of this action.

90. Plaintiff K.M.'s harms and losses suffered due to the close proximity to the shooting and a fear of being injured, include but are not limited to:

    a.  Personal injury;

    b.  Pain and suffering;

    c.  Mental anguish;

17

    d.   Loss of enjoyment of life;

    e.   Medical expenses;

    f.   Permanent impairment;

    g.   Lost wages; and

    h.   Loss of earnings capacity.

91. For which Plaintiff is entitled to recover an amount of actual, special, and consequential damages to be determined by the trial of this cause of action.

## FURTHER DAMAGES

92. Plaintiff repeats and realleges each and every allegation set forth above as though set forth verbatim and would further allege:

93. As a direct and proximate result of the acts and/or omissions as herein alleged on the part of Defendant in all paragraphs above, Plaintiff K.M, a minor child, has suffered the following damages, including, but not limited to:

    a.   Substantial medical expenses that are reasonably certain to occur for the remainder of her life;

    b.   Substantial care expenses that are reasonably certain to occur for the remainder of her life;

    c.   Substantial loss of earnings and impairment of earning capacity that are reasonably certain to occur for the remainder of her life;

    d.   Disability for K.M. likely to occur for the remainder of her life, including the necessity of psychiatric care;

    e.   Substantial injury to her psyche and emotional state; and

    f.   Substantial loss of enjoyment of life.

94. As a direct and proximate result of the acts and/or omissions as herein alleged on the part of Defendant in all paragraphs above, Plaintiff Felicia Sanders suffered the following damages, including, but not limited to:

    a. Substantial medical expenses for Plaintiff K.M. that are reasonably certain to occur before the age of 18;

    b. Substantial life care expenses for Plaintiff K.M. that are reasonably certain to occur before the age of 18;

    c. Care related to the disability of Plaintiff K.M. that is likely to occur before the age of 18, including the necessity of psychiatric care;

    d. Provision of extraordinary medical care for Plaintiff K.M.;

    e. Expenditure of economic resources to provide for Plaintiff K.M. before the age of 18, including, but not limited to, special education, assistance, or appropriate therapies which may alleviate some of the minor child's suffering due to the actions and/or inactions of Defendant.

95. Plaintiff Felicia Sanders is responsible for the medical bills, medical care, and overall care for Plaintiff K.M. until the child turns eighteen (18). If Plaintiff K.M. is under a disability, Plaintiff Felicia Sanders may be required to provide this care for an undetermined length of time after Plaintiff K.M. reaches the age of eighteen (18).

96. Plaintiff Felicia Sanders will suffer economic damages, including but not limited to, the provision of medical care, life care expense, psychiatric expense, counseling services, and special programs due to the actions and/or inactions of Defendant as delineated in all paragraphs above.

19

97. Plaintiff Felicia Sanders should be awarded any and all damages flowing from any

necessaries claim or any other damages they suffer as a consequence of the actions and/or

inactions of Defendant.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for all actual

and compensatory damages for each specific occurrence of negligence pled in this Complaint to

be determined by the trial of this action, the costs and disbursements of this action, and for such

other and further relief as this Court deems just and proper.

By: s/Gedney M. Howe, III
Gedney M. Howe, III (Fed Bar #1971)
Law Offices of Gedney M. Howe,
PO Box 1034
Charleston, SC 29402
Phone: 843-722-8048
Fax: 843-722-2140 (fax)
kleroy@gedneyhowe.com

Andrew J. Savage, III
Savage Law Firm
15 Prioleau St.
Charleston, SC 29401
Phone: 843-720-7470
Fax: 843-720-7478 (fax)
Andy@savlaw.com

Attorneys for Plaintiff

November 25, 2019