# Exhibit 5



National Press Releases

## Statement by FBI Director James Comey Regarding Dylann Roof Gun Purchase

Washington, D.C.  
July 10, 2015

FBI National Press Office  
(202) 324-3691

*Director James Comey provided the following statement to reporters at FBI Headquarters on July 10, 2015:*

I believe the job of the FBI Director is to be as transparent as possible with the American people, because we work for them. As you know, I try hard to explain our work to them, and I am also committed to explaining to them when we make a mistake and what I intend to do about it. I'm here today to talk to you about a mistake, in a matter of heartbreaking importance to all of us. Dylann Roof, the alleged killer of so many innocent people at the Emanuel AME church, should not have been allowed to purchase the gun he allegedly used that evening. Let me tell you what happened, as I understand it today.

As you know, the FBI, through our CJIS Division in West Virginia, administers part of the National Instant Criminal Background Check System, or NICS. We perform background checks in response to requests from gun dealers in about 30 states; the remainder of the states do their own.

South Carolina is one of the states for whom our West Virginia operation does background checks. South Carolina is where Dylann Roof purchased a gun in April 2015 that was later allegedly used in the mass murder in Charleston. And that's the transaction I want to talk to you about.

As you will recall, under federal law, a Federal Firearms Licensee must submit biographical information about a potential purchaser to NICS, and NICS has three business days to perform a background check and clear or deny the purchase. If the clear or deny decision has not been given in three business days, the FFL has the discretion to proceed with the transaction. Many large retailers exercise their discretion not to proceed until given a clear "yes," but many other retailers conclude the transaction after the three business days even in the absence of a clear decision, which is what the law allows.

I want to describe the particulars of the Roof gun purchase and background check, because Roof should not have been allowed to purchase the handgun. Here is what happened, as I understand it today:

On April 11, Roof attempted to purchase a handgun from a store in West Columbia, South Carolina, a near suburb of Columbia. That day was a Saturday. On the next business day, April 13, an examiner in our West Virginia facility was assigned the case and began to process it.

Her initial check of Roof's criminal history showed that he had been arrested in South Carolina March 1 on a felony drug charge. This charge alone is not enough to deny proceeding with the transaction. As a result, this charge required further inquiry of two potential reasons to deny the transaction. First, the person could have been convicted of a felony since the arrest. Second, the underlying facts of the arrest could show the person to be an unlawful drug user or addict.

Some understanding of the geography is important to understanding what happened next. Most of the city of Columbia is in Richland County but a small piece of it crosses the line into Lexington County. The Columbia police arrested Dylann Roof on drug charges, in the small piece of the city of Columbia that lies within Lexington County. Importantly, as part of that arrest, the report by the Columbia police reflected that Roof admitted he was in possession of drugs. If a NICS examiner saw that, Roof would be denied permission to buy a gun. But the examiner never saw that. Here's what happened, as best we understand it:

The NICS examiner studied Roof's criminal history and saw that the arresting agency listed on his rap sheet was the Lexington County Sheriff's Office. There was no mention of the Columbia police on the rap sheet. It is not clear why that happened, but it made a big difference in what happened next. The examiner followed our protocols and did three things:

First, she went on the website of the Lexington County court to see if the matter had been resolved.

Her review of the court website showed that Roof was a defendant there but there was not yet a

### Recent National Press Releases

09.01.15  Harold H. Shaw Named Special Agent in Charge of FBI Boston Division

09.01.15  David P. Gelios Named Special Agent in Charge of FBI Detroit Division

08.31.15  Aristedes Mahairas Named Special Agent in Charge of Special Operations/Cyber Division of the New York Field Office

08.28.15  Carlos T. Fernandez Named Special Agent in Charge of Counterterrorism Division of the New York Field Office

08.20.15  Adam S. Cohen Named Special Agent in Charge of Buffalo

08.19.15  James C. Trainor, Jr. Named Assistant Director of Cyber Division

08.03.15  William F. Sweeney, Jr. Named Special Agent In Charge of FBI Philadelphia

07.30.15  FBI Announces Executive Appointments

07.27.15  Scott L. Cruse Named Special Agent in Charge of Oklahoma City Division

07.23.15  FBI Announces Economic Espionage Awareness Campaign

More National Press Releases

...ment by FBI Director James Comey Regarding Dylann Roof Gun Purchase                                    5/11/15, 9:30 AM

disposition in the case, which meant he was not a convicted felon. She didn't stop there.

Second, she faxed a request to the Lexington County Sheriff's Office asking for more details on the case.

Third, she faxed a similar request to the Lexington County prosecutor's office.

She heard back from the sheriff's office, telling her that the case was not theirs, and that she should check with the Columbia Police Department.

Not knowing the geography, she did what she was supposed to do and followed our protocols. Examiners use contact sheets that list criminal justice organizations, organized by state and county. Because the arrest was attributed to the Lexington County sheriff, she was obviously dealing with Lexington County, so she pulled up the sheet for that county. As she examined it, she did not see a listing for a "Columbia," but she did see a listing for "West Columbia."

Informed by the fact that the gun had been bought in West Columbia and that it was the only listing on the sheet for such a name in Lexington County, she contacted the West Columbia police. They replied that they had no record of such a case.

The contact sheet for Lexington County did not list the Columbia police. Instead, Columbia PD was listed as a contact only on the sheet for Richland County. But the examiner never saw that sheet because she was focused on Lexington County.

So the court records showed no conviction yet and what she thought were the relevant agencies had no information or hadn't responded. While she processed the many, many other firearms purchases in her queue, the case remained in "delayed/pending."

By Thursday, April 16, the case was still listed as "status pending," so the gun dealer exercised its lawful discretion and transferred the gun to Dylann Roof.

After that horrific day when Roof allegedly used the gun in Charleston, the matter was obviously researched and the rap sheet confusion—listing the arresting agency as the Lexington County Sheriff—and the internal contact sheet omission were discovered. But the bottom line is clear: Dylann Roof should not have been able to legally buy that gun that day.

Those are the facts as we know them today. I have directed a full review of the matter by our Inspection Division and given them 30 days to report back to me. I will provide an update to you. I not only want to understand all the facts, but I want to know if there are ways to improve our process, our procedures, and our training. We are all sick that this has happened. We wish we could turn back time, because from this vantage point everything seems obvious, but we can't.

What we can do is make sure that we learn from it, get better, and work to ensure that we catch everything.

I want you to know that our folks in Charleston are meeting now to tell the families what we know and what we are going to do. All of us in the FBI, and across the entire nation, grieve for their unspeakable loss and want to do everything we can to help them find peace, strength, and healing.



Accessibility | eRulemaking | Freedom of Information Act | Legal Notices | Legal Policies and Disclaimers | Links | Privacy Policy | USA.gov | White House
FBI.gov is an official site of the U.S. government, U.S. Department of Justice

Close