IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| FELICIA SANDERS, individually and as Legal Custodian of K.M., a minor, | ) ) Civil Action No. 2:16-cv-2356-MBS ) |
| Plaintiff, | ) ) *consolidated with* 2:16-cv-2350; 2:16-cv-2351; 2:16-cv-2352; 2:16-cv-2354; 2:16-cv-2355; 2:16-cv-2357; 2:16-cv-2358; 2:16-cv-2359; 2:16-cv-2360; 2:16-cv-2405; 2:16-cv-2406; 2:16-cv-2407; 2:16-cv-2409; and 2:16-cv-2746 |
| v. | ) |
| THE UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |
| This document pertains to all cases | ) ) ) ) |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION
TO DEFENDANT'S RENEWED MOTION TO DISMISS**

In addition to the Plaintiffs' previous response (Entry Number 96)[1] and in further response to the second renewed motion of the United States to dismiss the above captioned actions Plaintiffs would first point out that Defendant's motion presents a facial challenge alleging the amended complaint simply fails to allege facts upon which subject matter jurisdiction can be based (Entry Number 89-1, p. 3-4 of 30). The grounds upon which the motion is predicated are Defendant's contentions that the amended complaint does not allege sufficient facts as to a private analog existing with respect to the FBI's conduct here and, insofar a private analog does exist, that South Carolina would impose no tort liability on a private person under similar circumstances. South Carolina law and the amended complaint itself refutes both of these claims.

As Defendant acknowledges in its memorandum in support of motion to dismiss, Defendant's motion presents a facial challenge subject to the same standard of review as is applied

---

[1] Plaintiffs also incorporate by reference herein all of Docket Nos. 15, 44, and 62.

1

to a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) (Entry Number 89-1, p. 3-4 of 30). Thus, the truthfulness of the facts alleged in the amended complaint are assumed. *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

As Defendant further acknowledges:

> To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S at 678.

## **ANALYSIS**

Plaintiffs' claims arise primarily out of the government's negligent failure to follow FBI Standard Operating Procedures (SOPs)[2] during a firearm background check of Dylann Roof. This failure resulted in Roof being allowed to purchase a semi-automatic Glock pistol he used to murder nine parishioners at the Mother Emmanuel Church despite the indisputable fact that Roof was disqualified from purchasing a firearm.

The amended complaint sets forth this claim (and others)[3] as follows:

> The United States, if a private a person herein, "would be liable to the claimant in accordance with the law of place where the act or omission occurs." 28 U.S.C. § 1346(b)(1). (Entry Number 84, paragraph 7, p. 2 of 20)
>
> Federal Statutory law and/or Federal regulations and/or Federal policy, including S.O.P. 5.5.5 (Exhibit 6), mandated that the second examiner was required to contact Columbia Police Department, the arresting agency, to obtain the Incident Report and/or Arrest Warrant and/or make a

---
[2] *Sanders v. U.S.*, 397 F.3d 316 (4th Cir. 2019)
[3] Plaintiffs do not submit any argument herein as to claims found to be excluded under *Sanders v. U.S., supra.*, but reserves all claims set forth in the amended complaint.

determination to make a determination based upon available information as to whether the receipt or transfer of a firearm would be in violation of Federal or state law.  (Entry Number 84, paragraph 37, p. 7 of 20)

An FBI NICS South Carolina City/County List contained data available to the second examiner during the performance of the Roof background check by the FBI NICS Operation Center in April, 2015 (Exhibit 7 attached).  (Entry Number 84, paragraph 38, p. 7 of 20)

The South Carolina City/County List as of April 11, 2015, reflected that the City of Columbia was located in Richland County.  (Entry Number 84, paragraph 39, p. 7 of 20)

As of April 11, 2015, an FBI NICS contact list for Richland County was available to the second examiner showing contact information sufficient to have allowed her to contact the Columbia Police Department.  (Exhibit 8 attached).  (Entry Number 84, paragraph 40, p. 8 of 20)

During the Roof Transaction the second Examiner did not search the South Carolina City/County List or the Richland County Contact List.  (Entry Number 84, paragraph 41, p. 8 of 20)

During the NICS transaction in April, 2015, referred to above, the Incident Report from the Columbia Police Department (Exhibit 1) was available from the Columbia Police Department as of April 11, 2015.  (Entry Number 84, paragraph 43, p. 8 of 20)

The second examiner never did contact the Columbia Police Department.  (Entry Number 84, paragraph 28, p. 5 of 20)

After the attack the FBI NICS researched Roof's eligibility to purchase a semi-automatic Glock pistol and, on June 28, 2015, the NICS unit, based on the information contained the Columbia Police Incident Report, did, in fact, issue a Decision to DENY the sale based on Federal Prohibitor 922(g)(3) (Exhibit 4).  (Entry Number 84, paragraph 33, p 6 of 20)

Defendant, in a statement by FBI Director James Comey, has admitted that it initially (in April 2015) should have denied the sale of a firearm by Shooter's Choice to Roof because such sale was in violation of the Brady Act.  (Exhibit 5) (Entry Number 84, paragraph 34, p. 6 of 20)

Based upon information contained in both the available February 28, 2015 Incident Report (Exhibit 1) and available in the arrest warrant (Exhibit 2), namely that Roof was an unlawful user of or addicted to a controlled substance, Defendant was required to deny the sale of a firearm by Shooter's Choice to Roof because such sale was in violation of 18 U.S.C. § 922(d)(3), and 18 U.S.C. § 922(g)(3).  (Entry Number 84, paragraph 35, p. 7 of 20)

If Defendant had complied with the mandatory and non-discretionary Federal statutory law and/or Federal regulations and/or Federal policy which mandated the second examiner to perform a proper search so as to

3

> enable the second examiner to contact the Columbia Police Department, the arresting agency, and the agency that the second examiner had been expressly told had the incident report, the FBI NICS Operation Center would have obtained the Columbia Police Department Incident Report. (Entry Number 84, paragraph 44, p. 8 of 20)
>
> If the NICS Operation Center had obtained the Columbia Police Department Incident Report, Roof would not have been permitted to purchase the semi-automatic Glock pistol he purchased on April 16, 2015, used to murder nine parishioners and to attempt to murder others on the attack on Mother Emanuel AME Church in Charleston, South Carolina. (Entry Number 84, paragraph 45, pp. 8-9 of 20)
>
> Defendant was negligent, careless, grossly negligent and reckless in the failures set forth above including but not limited to failing to properly search criminal history and make a determination based upon available information and/or failure to contact state POC (SLED), or the Columbia Police Department or the Lexington County Court or to search NICS Index to obtain available information or to research and/or review the South Carolina City/County List and/or South Carolina Contact List for Richland County, or to maintain data integrity as to Lexington County Contact List each of which negligence, carelessness, gross negligence and recklessness resulted in the failure to deny the sale of the semi-automatic Glock pistol to Roof, and creation of risk of death and injury to Plaintiff. (Entry Number 84, paragraph 83, p. 16 of 20)

In *Sanders v. U.S.*, s*upra* the Court of Appeals confirms Plaintiffs' claims are appropriate claims and found that the Legal Examiner conducting the background check in this case:

> …was required under SOP 5.5.5, and in accordance with the State Processing Page, to contact the Columbia PD as the arresting agency to obtain the report. She did not do so. *Id*. at 330
>
> * * *
>
> Once the Examiner's inquiry revealed that the Columbia PD was the arresting agency and that it had the report, she was required to contact it. *Id.* at 330.
>
> * * *
>
> We hold only that where an Examiner's mandatory research yields precisely the type of information the SOPs require, she must act on that information. *Id.* at 331
>
> * * *

4

> …when the Examiner learned that the Columbia PD was the arresting agency with the incident report, she could and should have used the resources at her disposal (1) to confirm that Columbia is in Richland County and (2) to find the Columbia PD's contact information on the Richland County list. *Id.* at 331
>
> * * *
>
> This case turns instead on the NICS Examiner's alleged negligence in failing to follow a clear directive – contact the arresting agency – contained within the mandatory SOPs. *Id* at 331

As further set forth in the district court's order in *Sanders v. United States*, No. 2:16-cv-2356-RMG, 2017 WL 1102612, at *6 (D.S.C. Mar. 23, 2017):

> While persons owe no general duty to protect others from third parties, South Carolina law holds persons liable when they negligently create a foreseeable risk of harm from a third party. *Greenville Mem'l Auditorium v. Martin*, 391 S.E.2d 546, 548 (S.C. 1990). In South Carolina,
>
>> [t]he law is well settled that in order to establish liability it is not necessary that the person charged with negligence should have contemplated the particular event which occurred. It is sufficient that he should have foreseen that his negligence would probably cause injury to something or someone. He may be held liable for anything which appears to have been a natural and probable consequence of his negligence. If the actor's conduct is a substantial factor in the harm to another, the fact that he neither foresaw nor should have foreseen the extent of harm or the manner in which it occurred does not negative his liability.
>
> *Childers v. Gas Lines, Inc.,* 149 S.E.2d 761, 765 (S.C. 1966) (citations omitted).
>
> Plaintiffs allege, in effect, that negligently failing to prevent Roof from purchasing his Glock was a substantial factor in the harm suffered by the victims of Roof's attack on Mother Emanuel using that same Glock. That allegation appears, at first glance, to be sufficiently plausible at least to survive a motion to dismiss. *See Houck v. Substitute Tr. Servs., Inc.,* 791 F.3d 473, 484 (4th Cir. 2015) ("To survive a motion to dismiss, a plaintiff need not demonstrate that her right to relief is probable or that alternative explanations are less likely; rather, she must merely advance her claim 'across the line from conceivable to plausible.' If her explanation is plausible, her complaint survives…regardless of whether there is a more plausible alternative explanation.") The Court therefore denies the motion to dismiss.

5

The law in South Carolina is clear as to negligence. As also set forth in the prior order of the district court, *Sanders v. United States*, No. 2:16-cv-2356-RMG, 2017 WL 1102612, at *5 (D.S.C. Mar. 23, 2017):

> South Carolina's substantive law of negligence governs Plaintiffs' negligence claims. *See United States v. St. Louis Univ.*, 336 F.3d 294, 300 (4th Cir. 2003). In South Carolina, plaintiffs must show (1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty by a negligent act or omission, (3) damages suffered by Plaintiff, (4) which actually and proximately resulted from the breach. *Madison ex rel. Bryant v. BabcockCtr., Inc.*, 638/ S.E.2d 650, 656 (S.C. 2006).

As further set forth in *Sanders v. United States*, *Id.* at *6, a person owes a duty to protect others from third parties by not negligently creating a foreseeable risk of harm. The duty of care is confirmed to exist where a defendant negligently creates a risk and/or voluntarily undertakes to act. *Faile v. SC Dept of Juvenile Justice*, 350 S.C. 315, 566 S.E.2d 536, 546 (S.C. 2002).

Defendant contends that notwithstanding Plaintiffs' allegations to the contrary, it did not voluntarily undertake the duty to conduct Roof's background check in a non-negligent manner. In *Miller v. City of Camden*, 494 S.E.2d 813, 815, (S.C. 1997) the South Carolina Supreme Court held:

> If an act is voluntarily undertaken, however, the actor assumes the duty to use due care. *Russell v. City of Columbia*, 305 S.C. 86, 406 S.E2d 338 (1991)…the question whether such a duty arises in a given case may depend on the existence of particular facts. *Carson v. Adgar*, 326 S.C. 212, 486 S.E.2d 3 (S.C. 1997)…the existence of a duty becomes a mixed question of law and fact to be resolved by the fact finder.

In *Miller*, *supra*, at 818, the facts set forth that the Kendall Company knew a dam was a high hazard because of the dam's failure and participated in the creation of an emergency notification plan. Specifically, the company's personnel were assigned to monitor the dam. The company understood that breach of the dam could result in serious damage to life and property. It

6

nevertheless volunteered to monitor the dam and notify appropriate officials in the event of an imminent threat. These facts created a question of fact as to whether the Kendall Company undertook to act and if so, whether it owed a duty to use reasonable care in monitoring the dam and notifying appropriate officials of the danger. The court found this was "an issue that should be resolved by the jury." *Id.* at 815.

As the truthfulness of the facts alleged in the amended complaint are assumed, the amended complaint is sufficient to allege Defendant voluntarily undertook to act or at least the allegation created a factual question on this issue which cannot be resolved on a motion to dismiss. The amended complaint alleges that defendant NICS undertook to perform a background check on Dylann Roof and negligently performed that background check. It then specifically alleged that Defendant's negligence created the risk of harm to Plaintiffs. Accordingly, the South Carolina law places a duty of care on Defendant as alleged in the amended complaint. The amended complaint also alleges a breach of that duty by a negligent act or omission and damages suffered by the Plaintiffs which actually and proximately resulted from the breach.

In addition South Carolina law provides:

> The duty of care is that standard of conduct the law requires of an actor to protect others against the risk of harm from his actions. *Bailey v. Segars*, 346 S.C. 359, 550 S.E.2d 910, 913-14 citing *Carter v. R L Jordan Oil Co., Inc.*, 294 S.C. 435, 440, 365 S.E.2d 324, 329 (Ct. App. 1988) which reaffirms this standard for determination of negligence in *Carter v. R L Jordan Oil Co., Inc.*, 299 S.C. 439, 385 S.E.2d 820 (S.C. 1989).

Also supportive of Plaintiffs' contention concerning the fact that South Carolina law recognizes this claim is the language set forth in *Greenville Mem'l Auditorium v. Martin* set forth in *Sanders v. United States*, *Id.* at *6 citing the language in *Childers v. Gas Lines, Inc.*, 248 S.C. 316, 149 S.E.2d 761, 765.

Further, in *Bailey v. Segars*, *supra.*, it is set forth as follows:

7

> Proximate cause requires proof of (1) causation in fact and (2) legal cause. Causation in fact is proved by establishing the injury would not have occurred "but for" the defendant's negligence. Legal cause is proved by establishing foreseeability. Although foreseeability of some injury from an act of omission is a prerequisite to establishing proximate cause,…the plaintiff need not prove that the actor should have contemplated the particular event which occurred…The defendant may be held liable for anything which appears to have been a natural and probable consequence of his negligence. A plaintiff therefore proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the defendant's negligence.

In addition, as set forth above, Plaintiffs have specifically alleged that the Defendant's negligence created the foreseeable risk of death and injury to Plaintiffs.[4] All of the above clearly demonstrates that South Carolina law allows Plaintiffs' claims set forth in the amended complaint to advance. Defendant's negligence, which resulted in Roof being allowed to purchase his murder weapon, created a **plausible** risk of injury and death to Plaintiffs,

As to Defendant's contention that no private analog exists here with respect to the FBI's conduct at issue, opinions from the Supreme Court and Courts of Appeals have enunciated relevant principles which support a different conclusion.

> …all Government activity is inescapably "uniquely governmental" in that it is performed by the Government. *Indian Towing Company, Inc. v. United States,* 350 U.S. 61, 67, 76 S.Ct. 122, 126 (1955).
>
> The broad and just purposed which the statute was designed to effect was to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable… *Id.,* U.S. at 68, S.Ct. at 126.
>
> The act makes the United States liable "in the same manner and to the same extent as a private individual under *like circumstances*." 28 U.S.C. § 2674 (emphasis added). As this Court said in *Indian Towing*, the words "'like

---

[4] Again, while the allegations of the amended complaint, taken as true, are sufficient, testimony from the jurisdictional discovery confirms that the failure of the NICS examiner to perform a proper background check created the opportunity which allowed Roof to obtain his murder weapon (Dkt No. 44-14, Deposition of Stephen Morris, p. 141, line 17 - p. 142 line 9, see also p. 171, line 23 - p. 172, line 8.

> circumstances'" do not restrict a court's inquiry to the *same circumstances*, bit require it to look further afield. *U.S. v. Olson*, 546 U.S. 43, 46, 126 S.Ct. 510, 513 (2005).
>
> …the FTCA imposes liability upon the government to the same extent, and in the same manner, as a private individual under "like," not identical, circumstances, 28 U.S.C. § 2674; *see Indian Towing Co. v. United States, Akutowicz v. U.S.*, 859 F.2d 1122, 1125 (2nd Cir. 1988).
>
> The comparisons of activities need not be exact. *Howell v. U.S., 932 F.2d 915, 918 (11th Cir. 1991).*
>
> …the test established by the Tort Claims Act for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred. *Rayonier Incorporated v. United States*, 352 U.S. 315, 318, 77 S.Ct. 374, 376 (1957).

Plaintiffs submit that in determining whether a cause of action for conduct comparable to those alleged here exists, the specific conduct at issue must first be analyzed. The Defendant's position appears to be that the Examiner's omission is quasi-adjudicative or quasi-legislative analogous to the exercise by federal agencies of quasi-legislative or quasi-adjudicative powers. However, the Defendant does not and cannot explain how the Examiner's failure to use available information and resources to contact the Columbia PD is quasi-legislative and/or quasi-adjudicative. In fact, the Examiner's omissions are neither. Rather, her omission is an ordinary common law tort (negligence) which is exactly what motivated the passage of the Federal Tort Claims Act. *Dalehite v. United* States, 346 U.S. 15, 28 (1953), ("Uppermost in the collective mind of Congress were the ordinary common–law torts"). The Examiner's conduct in negligently searching for a police report is very different from legislating or adjudicating.

Plaintiffs respectfully submit that a private analog exists for the common law tort (negligence) at issue here. As previously set forth, private party analogs include liability existing for 1) a gun dealer such as Shooter's Choice, if the gun dealer's computer received a "Denied"

response but the gun dealer does not search its records to find this response and improperly makes the sale; 2) companies which do background checks for security guard companies which fail to disclose that the security guard to be employed had a violent criminal history, when the security guard thereafter commits a violent crime during the course of his employment for which the security guard company may be responsible; 3) negligent background checks which are done for hospitals resulting in employment of persons without medical qualifications who later injure patients; 4) negligent background checks by companies who do background checks for schools resulting in unfit teachers who harm students being hired; and 5) negligent background checks by companies which provide information to nursing home facilities regarding the qualification of potential employees who later harm elderly residents. (See Affidavit of David Price – Exhibit A)

The language in *Rayonier Incorporated v. United States*, 352 U.S. 315, 319-20 77 S.Ct. 374, 377 (1977) is most appropriate here as follows:

> It may be that it is "novel and unprecedented" to hold the United States accountable for the negligence of its firefighters, but the very purpose of the Tort Claims Act was to waive the Government's traditional all-encompassing immunity from tort actions and to establish novel and unprecedented governmental liability…Congress, believing it to be in the best interest of the nation, saw fit to impose such liability on the United States in the Tort Claims Act. Congress was aware that when losses caused by such negligence are charged against the public treasury they are in effect spread among all those who contribute financially to the support of the Government and the resulting burden on each taxpayer is relatively slight. But when the entire burden falls on the injured party it may leave him destitute or grievously harmed. Congress could, and apparently did, decide that this would be unfair when the public as a whole benefits from the services performed by Government employees…If the Act is to be altered that is a function for the same body that adopted it.

For the foregoing reasons as well as any which may be advanced at any hearing to be held and those previously advanced herein, Plaintiffs respectfully submit that Defendant's motion to dismiss should be denied.

s/Gedney M. Howe, III

SEN. GERALD MALLOY
Malloy Law Firm
PO Box 1200
Hartsville, SC  29551
Phone:  843-339-3000
Fax:  843-332-4646
gmalloy@bellsouth.net

S. RANDALL HOOD
McGowan, Hood & Felder, LLC
1539 Health Care Drive
Rock Hill, SC  29732
Phone:  803-327-7828
rhood@mcgowanhood.com

GEDNEY M. HOWE, III
Law Offices of Gedney M. Howe, III, PA
PO Box 1034
Charleston, SC  29402
Phone:  843-722-8048
ghowe@gedneyhowe.com

*Attorneys for: Jennifer Pinckney, Personal Representative of the Estate of Clementa Pinckney; Jennifer Pinckney; Jennifer Pinckney, individually and as Parent, Natural Guardian and Next Friend of M.P., a minor*


GEDNEY M. HOWE, III
Law Offices of Gedney M. Howe, III, PA
PO Box 1034
Charleston, SC  29402
Phone:  843-722-8048
Fax:  843-722-2140
ghowe@gedneyhowe.com

ANDREW J. SAVAGE, III
Savage Law Firm
15 Prioleau Street
Charleston, SC  29401
Phone:  843-720-7470
Fax:  843-720-7478
Andy@savlaw.com

11

*Attorneys for: Tyrone Sanders, Personal Representative of the Estate of Tywanza Sanders; Felicia Sanders; Felicia Sanders, individually and as Legal Custodian of K.M., a minor; Polly Sheppard; Walter B. Jackson, Personal Representative of the Estate of Susie Jackson; Laura Moore, Personal Representative of the Estate of Ethel Lance; Bethane Middleton-Brown, Personal Representative of the Estate of DePayne Middleton-Doctor*

GEDNEY M. HOWE, III
Law Offices of Gedney M. Howe, III, PA
PO Box 1034
Charleston, SC  29402
Phone: 843-722-8048
Fax:  843-722-2140
ghowe@gedneyhowe.com

ANDREW J. SAVAGE
Savage Law Firm
15 Prioleau Street
Charleston, SC  29401
Phone:  843-720-7470
Fax:  843-720-7478
Andy@savlaw.com

W. MULLINS McLEOD, JR.
McLeod Law Group, LLC
3 Morris Street, Ste. A
Charleston, SC  29403
Phone:  843-277-6655
Mullins@mcleod-lawgroup.com

J. STEPHEN SCHMUTZ
Schmutz & Schmutz Attorneys at Law
24 Broad Street
Charleston, SC  29401
Phone:  843-577-5530
Steve@schmutzlaw.com

*Attorneys for: Anthony Thompson and Kevin Singleton, as Co-Personal Representatives of the Estate of Myra Singleton Quarles Thompson*

          W. MULLINS McLEOD, JR.
          McLeod Law Group, LLC
          3 Morris Street, Ste. A
          Charleston, SC  29403
          Phone:  843-277-6655
          Mullins@mcleod-lawgroup.com

          J. STEPHEN SCHMUTZ
          Schmutz & Schmutz Attorneys at Law
          24 Broad Street
          Charleston, SC  29401
          Phone:  843-577-5530
          Steve@schmutzlaw.com

          DAVID F. AYLOR
          David Aylor Law Offices
          24 Broad Street
          Charleston, SC  29401
          Phone:  843-310-4900
          David@davidaylor.com

*Attorneys for: Shalisa Coleman, as Personal Representative of the Estate of Sharonda Coleman-Singleton; Anthony Thompson; Arthur Stephen Hurd, as Personal Representative of the Estate of Cynthia Graham Hurd; Arthur Stephen Hurd*

January 29, 2020

13